JAMES SOPER, *et al.*, v. H. N. MEDBERRY, *et al.*

PETITION FOR NEW TRIAL, *When not in Time.* Where a trial is had and judgment rendered in a case in the district court, and more than four years thereafter the defeated party files a petition in the district court asking for a new trial on the ground that the petitioner did not have a fair and impartial trial on account of bias and prejudice on the part of the jury that tried the cause, *held,* that the petition for the new trial is not filed in time, ( Civil Code, § 306,) and the new trial cannot be granted. And further, *held,* that the fact that the petitioner had no knowledge of such prejudice until about the time that he filed such petition, can make no difference. And further, *held,* that the fact that during a portion of four years the case was pending in the supreme court, where the judgment of the district court was finally affirmed, and affirmed in less than one year before the petitioner filed his said petition for a new trial, can make no difference.

*Error from Miami District Court.*

AT the May Term, 1877, the district court granted a new trial in a certain action, as prayed for by *H. N. Medberry, Penn Yetter, F. M. Shaw,* and *C. A. Leighton.* The adverse

parties, *Soper, Brainard & Co.*, bring the case here. The opinion sufficiently states the facts.

*B. F. Simpson*, for plaintiffs in error:

The petition for a new trial does not state a single act done or inquiry made by the petitioners, or by their counsel, previous to the impanneling of the jury, as to their feelings toward the defendants, Shaw and Leighton; and it fails to allege that petitioner's counsel was ignorant of the bias or prejudice of the juror. That the petition is defective, see 7 Neb. 320; 19 Ark. 156; 20 id. 156; 4 Ohio St. 234; 14 Ga. 709.

Nothing that is a cause of challenge to a juror before verdict, can be used to set it aside, even though the cause of challenge was unknown to the party when the jury was sworn. (*United States v. Baker*, 3 Benedict, 68.)

When the defendant fails to object to the competency of a juror, he cannot raise the question after verdict and motion for a new trial. (32 Ind. 384.)

This is not a case in which the juror, upon an examination for cause, stated he had no bias or prejudice against the defendants, but is one where there is a total failure to state or show that any attempt was ever made at any stage of the trial to ascertain the feelings of the jury.

It seems to be a well-settled rule, that if a party neglects to avail himself before the trial of any of the means which the law provides for ascertaining whether the jury is prejudiced, he will not be entitled to a new trial on that ground.

Another fact stated in the petition is, that the judgment of the district court of December, 1872, was affirmed in this court at the January term, 1877, and that it became a judgment of the supreme court of the state, which no subsequent action of the district court could set aside.

The learned judge below seemed to think that the judgment of affirmance rendered in this court was the *final* judgment within the meaning of the concluding words of § 310 of

9—24 KAS.

the code, and as this petition was filed within one year from he rendition of that judgment, it was in time.

When the district court overruled the motion for a new trial and rendered judgment on the verdict of the jury in December, 1872, it was a final judgment. All that the court could do with respect to the subject-matter of that litigation, was done. (§ 375, Civil Code.) If it was not the final judgment of the district court, it could not have been reviewed in this court, as was done in 17 Kas. 369. And after its affirmance in this court, the district court in which it originated makes no order respecting it; the mandate of this court is usually spread on the journal of the court below, and the judgment is enforced in the usual way.

If the final judgment referred to in the clause of § 310 is the judgment of the supreme court, what construction is to be given it when the case is remanded with directions to grant a new trial? And what construction is to be given it when the case is never taken to the supreme court? If it means the final judgment of the supreme court, it is only in cases where the judgment below is affirmed. When it is reversed, some other rule or statute governs in granting new trials, when the cause therefor is discovered after the trial term; and to adopt the construction of defendants in error, it must be after the trial term of the supreme court.

These proceedings in the supreme court of the state, instituted by Shaw and Leighton to reverse the judgment of the district court, is a distinct action. It is the institution of a separate suit, and while it grows out of the action below, it is prosecuted by them as plaintiffs. Its object is to determine whether any substantial error has been committed to their prejudice below, and its determination may or may not be a final judgment—at least, it is not the same action, and the judgment rendered is not the final judgment which we are considering. (46 Ala. 131; 58 Ind. 401.)

*W. R. Wagstaff*, for defendant in error F. M. Shaw:

As to the objection that the judgment of the court below has been affirmed in this court: The judgment of the district

court, pending an appeal to the supreme court, must be interpreted under the provisions of the code. In general, the powers of the district court over the issues before it are determined in the judgment. For causes enumerated in § 306 of the code, the district court has power to review its own judgments. A judgment, or final order of the district court, under subdivisions 1, 2 and 3, of § 542, may go before the supreme court. (15 Kas. 561; 14 id. 144; 12 id. 270; 11 id. 126; 10 id. 232; 8 id. 476; 5 id. 233, 253. See also 10 Kas. 37; 11 id. 175.)

Pending an appeal from the district to the supreme court, the judgment of the district court is not final; its validity is undetermined before and within the jurisdiction of a higher tribunal. The order of the supreme court settles the validity of the judgment of the district court. After the entry of such order, in the court below, and judgment thereon, it is final, under § 395 of the code. It may be denominated the judgment of the supreme court, or of the district court. The duty of the district court is the same: it shall proceed thereon in the same manner as if the judgment had been rendered therein. Under § 568 of the code, the district court shall have power to vacate or modify its own judgments or orders at or after the term at which such judgment or order was made, by granting a new trial of the cause, within the time and in the manner prescribed in § 310. (See authorities cited in statutes under § 568.)

The code remedy for a new trial is merely cumulative of remedies recognized at common law. (1 Ohio St. 167; 8 id. 592; 9 id. 336; 6 id. 216.)

Vacating a judgment, or setting it aside after the term, is a common-law power. (Freeman on Judgments, §§ 90, 96.)

A court of equity will direct a new trial in a case where such trial would have been ordered by the court wherein the judgment was rendered, if timely application had been made, provided proper reasons are shown why such application was not made, or the grounds of equitable interference arose after

the time had expired for the court wherein the action was tried, to grant relief. (14 Iowa, 311; 31 id. 460.)

When it would be proper for a court at law to grant a new trial on the ground of newly-discovered evidence, if the application is made while the court has power so to do, it is equally proper for a court of equity to decree a new trial when the application is made on the ground of evidence discovered after a court of law ceased to have power over it. (14 Iowa, 314, 319.)

Whenever, after verdict, it appears that a fair trial, by an impartial jury, has been prevented by fraud or imposition, that was unknown to the party injured thereby, and that could not have been prevented on his part, by proper diligence, the court, on application, will set aside the verdict and grant a new trial. (2 Ohio St. 164. See also 3 Ohio, 522; 2 Mich. 134; 5 Iowa, 400; 13 Kas.; 13 Wis. 482; 29 id. 688, 691.)

The opinion of the court was delivered by

VALENTINE, J.: This was an application by petition for a new trial. The court below granted the new trial and the adverse parties now (as plaintiffs in error) bring the case to this court, asking for a reversal of the ruling, order and judgment of the court below granting a new trial. The trial in the original case was had and the proper judgment rendered therein at the December term of the district court, (December 12, 1872,) and the petition for the new trial was filed March 29, 1877. The only ground set forth for the new trial was, that the petitioners did not have a fair and impartial trial, at the original trial, on account of bias and prejudice on the part of the jury that tried the cause. The petitioners (who are now the defendants in error) have not pointed out specifically the clause or clauses of the statutes upon which they found their claim for a new trial, but they seem however to make the claim upon general principles and "for causes enumerated in § 306 of the code," and they also

refer to § 568 of the code. (Comp. Laws of 1879, pp. 641, 679.) The petitioners also set forth in their petition the following excuses for their very long delay (over four years) in filing their said petition asking for a new trial.

1. They had no knowledge of said prejudice on the part of the jury until February 7, 1877, when for the first time they were informed of such prejudice.

2. Some time after the original trial was had, and after the original judgment was rendered, they took the case to the supreme court, where said judgment was finally affirmed, (*Medberry v. Soper*, 17 Kas. 369 to 378,) and the cause was remanded to the district court, where, as they claim, the *final* judgment was finally rendered against them in the case in February, 1877.

Now, we do not think that the petitioners are entitled to a new trial upon general principles, nor under any statute, unless it be under some one or more of the provisions of subdivisions 1, 2 and 3 of § 306 of the Civil Code. If they are entitled to a new trial at all, it must be because of some "irregularity in the proceedings of the . . . jury," or "misconduct of the jury," or "accident or surprise which ordinary prudence could not have guarded against." They have set forth nothing else in their petition for which a new trial could be granted. But why did not the petitioners know of said prejudice at or before the original trial, or within some reasonable time afterward? It would not seem that they exercised much, if any diligence to ascertain such alleged prejudice, or to know whether said jurors were fair and impartial, or not. It would indeed seem from the affidavits of the petitioners that some sort of an examination of the jurors was had at the time the jury was impaneled, but what kind of an examination was had is not shown. What questions were asked, or what answers were given, we do not know. F. M. Shaw and C. A. Leighton were the principal petitioners, and are now the principal defendants in error. There is no claim that any of the parties other than Shaw and Leighton were, or are entitled to a new trial. Shaw and Leighton were bank-

ers; and it is alleged in the petition that said prejudice arose principally in connection with their business affairs as bankers. And the petition further alleges that "Shaw & Leighton were constantly occupied in attending to said necessary and legitimate affairs, taking *no thought or care* as to whether prejudice existed in the minds of any as to their occupation or mode of business that might operate to their injury or prejudice in this action, or in any other respect." This allegation is set forth as an excuse for not knowing of said prejudice prior to February 7, 1877, although the trial was had in December, 1872.

We do not think that there were facts sufficient alleged in said petition, or proved, to show prejudice on the part of the jury as a body. There was evidence tending to prove that one, and possibly two or three of the jurors, were prejudiced. As to what was done by the jury after it was impanneled, except to hear and determine the case and to determine the case against the petitioners, we are left almost wholly in the dark. Certainly no very great misconduct was shown. One juror took notes of the evidence, which he had in the jury room. Another juror was shown to have been prejudiced against the petitioners, and he, or some other juror, said in the jury room, "Damn Shaw." And this is about all we know upon the subject. For the purposes of this case, however, we shall consider that the jurors were prejudiced against the petitioners. Whether the petitioners' *counsel* knew of this prejudice, or not, at the time the jury was impanneled, we are not informed. We are only informed that the petitioners themselves did not know it. With regard to prejudice of jurors, and the duty of parties and counsel to ascertain the same, see authorities cited by counsel for plaintiffs in error.

For the purposes of this case we shall consider that the court below might have granted a new trial to the petitioners upon the grounds set forth in their petition, if the application for the new trial had been made in proper time. But was the application made within proper time? The law requires that the application should be made within one year

after the final judgment is rendered. Section 310 of the civil code provides that "where the grounds for a new trial could not, with reasonable diligence, have been discovered before, but are discovered after the term at which the verdict, report of referee or decision was rendered or made, the application may be made by petition filed as in other cases, not later than the second term after discovery; . . . but no such petition shall be filed more than one year after the final judgment." (Comp. Laws of 1879, p. 642.) Now in this case the petition was not filed for more than four years after the final judgment was rendered. The judgment was rendered in the district court on Dec. 12, 1872, and it was allowed to stand for over one year, for more than two years and for a large portion of the third year, before any attempt was made to take the case to the supreme court; when, on July 14, 1875, the case was finally taken to the supreme court. Whether a bond was then given and the judgment of the district court stayed or not, is not shown. On January 2d, 1877, the case was decided by the supreme court, and the judgment of the district court was *affirmed*. The judgment of the district court was never disturbed in any manner or particular, but it was allowed to remain final, and just such a final judgment as is contemplated by said § 310 of the civil code. The mere taking of a case to the supreme court does not in any case destroy the judgment previously rendered therein; nor does it even suspend the operation of such judgment, unless a bond is also given for such purpose; and if the judgment is affirmed, no new judgment is rendered, but the old judgment originally rendered remains intact, in full force and effect, and final. The principal question before the supreme court when a case is brought before it on petition in error is, whether the judgment originally rendered in the case shall remain final, or whether it shall be reversed, vacated or modified; and where the supreme court affirms the judgment, it determines that the judgment shall remain final. The judgment in this case remained a final judgment for more than one year, and even for more than two years, before

the case was taken to the supreme court; and it remained a final judgment for more than one year while the case was pending in the supreme court. It remained a final judgment for more than four years, altogether, before the said petition (this application) for a new trial was filed. We do not think that the petitioners filed their petition for a new trial in time, and therefore the judgment and order of the district court granting a new trial on such petition must be reversed.

All the Justices concurring.