## BRISSEY *et al.* v. TROTTER.

No. 1839. Opinion Filed May 14, 1912.

Rehearing Denied August 20, 1912.

(125 Pac. 1117.)

1.    APPEAL AND ERROR—Review—Evidence. Where there is evidence reasonably tending to support a verdict, a judgment based on the verdict will not be reversed on appeal.

2.    SAME—Instructions—Right to Allege Error. A party cannot be heard to complain of an instruction in substance the same as one requested by himself.

(Syllabus by Rosser, C.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by David Trotter against W. C. Brissey and James Trotter. Judgment for plaintiff, and defendants bring error. Affirmed.

*Warren K. Snyder* and *Harry White,* for plaintiffs in error.

*W. F. Wilson, John Tomerlin,* and *H. E. Elder,* for defendant in error.

Opinion by ROSSER, C.   This was a suit by David Trotter, hereinafter called plaintiff, against W. C. Brissey and James Trotter, hereinafter called defendants, to recover the value of certain cattle and certain fodder, cotton seed, cane, and corn. David Trotter is a nephew of James Trotter and a cousin of the wife of W. C. Brissey.   The petition alleges that, while plaintiff was of unsound mind and unable to understand the nature of the transaction, the defendants induced him to trade the cattle and feed stuff to defendant Brissey for a certain tract of land in Roger Mills county.   It further alleges that as soon as he recovered his mind, and was able to understand and to transact business, he demanded the return of the property which he had delivered to the defendants, and offered to reconvey the land to W. C. Brissey.   He recovered a judgment, and defendants have appealed.

The defendants, as one of the grounds for reversal, say that the evidence was not sufficient to show that the plaintiff was of unsound mind at the time of the transaction.   The evidence upon the part of the plaintiff shows that for some time before the trade he was in bad health; that his conduct was peculiar; that he could not talk connectedly; that he was restless; that while engaged in conversation with people visiting at his house he would abruptly leave, without any excuse or reason; that he left his home during a rain storm, against the objections of his neighbors, to go to the home of defendant James Trotter.   It also shows that a short time after the transaction some steps were taken by his relatives to have him examined with reference to his sanity.   The deed was made November 6, 1906, and on the 13th of January, 1907, James Trotter wrote to Thos. Boyd, plaintiff's father-in-law, the following letter:

"Jones City, Okla. Jan. 13, 1907.   Mr. Thomas Boyd—Dear Sir: I write to you in regard to Dave. He seems better at times, but my oppinion is that Dave neaver will do anything with that land out west and if I were you I would go and see the land at once and if it is as good as represented you can buy the other 80 now cheap and hold it all or you can sell it all to Sam Eoff in Maud and make at least 600$. I don't think Dave has any notion of doing anything at all at least he said he neaver will work any more.   I have almost come to the conclusion that Dave has a mo-

tive in doing just as he is for a purpose and I think that the sooner you take hold for Nervy and the child the better. Dave never was cheated in the trade. The land is worth at least 600$ more than he gave for it so sais good men that knows the land. Dave will not sell the land to you or anyone else. I write you this as a friend, not for pay or profit. I am sorry I had anything to do with the cattle but my honest opinion is that the cattle deal or the land deal had anything to do with Dave's mind."

There was sufficient testimony to justify the jury in finding that the plaintiff was of unsound mind at the time the contract was made. Where there is evidence reasonably tending to support the verdict, this court will not disturb it. *Harrill v. Parkinson,* 27 Okla. 528, 112 Pac. 970; *Loeb v. Loeb,* 24 Okla. 384, 103 Pac. 570.

The defendants assign as error the giving of the following instruction:

"The jury are instructed that they must presume and find that D. A. Trotter, at the time of the execution of the deed by the defendant W. C. Brissey and the bill of sale by the plaintiff, D. A. Trotter, and the making of the trade complained of, was of sound mind and competent to execute the same, unless a preponderance of the evidence in this case prove the contrary; that if, after considering all of the evidence in the case, the jury are unable to determine from the evidence whether D. A. Trotter, the plaintiff, at the time of such transaction, was of sound mind and mentally competent to execute said papers and make said trade, they should find from their verdict that he was of sound mind and was so competent."

Why this instruction was error is not pointed out. It is an exact copy of one requested by the defendants, except that the word "prove" in the first line is "presume" in the one requested and marked "Given" by the trial judge. The use of "prove" instead of "presume" was evidently a clerical error, and could not have misled the jury, when considered in connection with the other instructions.

Defendants complain of the following instruction:

"The court instructs you that the fact that a man makes an unprofitable trade or poor bargain, or that he is generally unthrifty in his business, does not of itself prove him to be of unsound mind, or what in the law is termed *non compos mentis.*"

Brissey et al. v. Trotter.

This instruction is the latter half of the fifth instruction requested by the defendants.

Defendants also complain of the following instruction:

"If you believe from the evidence that at the time of the trade with the defendant Brissey the plaintiff's mind was so deranged that he could not understand and comprehend the effect and consequences of that act, and was not fully conscious of what he was about, your verdict should be for the plaintiff for the sum which you find to be the reasonable market value of the cattle and feed which the plaintiff traded to the defendants, or either of them, which were subsequently acquired by the defendant Trotter after the same were traded to the defendant Brissey, with interest thereon from that date at the rate of six per cent. per annum."

It is not shown how or why this instruction was error. It seems to be suggested that interest should not have been allowed from the time of the trade, but only from the time of the offer to rescind. No argument is made, or authorities cited, in support of this proposition. A *remittitur* of $100 was entered, which cured any excess in the verdict, if there was any. Other suggestions are made as to instructions; but they are not of sufficient importance to require consideration.

The judgment should be affirmed.

By the Court: It is so ordered.