## ST. LOUIS & S. F. R. CO. v. BELL.

No. 3608.   Opinion Filed June 13, 1916.

Concurring Opinion June 29, 1916.

(159 Pac. 336.)

1.    **RAILROADS—Construction of Railroad Crossings—Restoration of Highway—Question for Jury.** In a suit in damages for personal injuries, based upon the theory that defendant had failed to restore a highway to its former state or to such a condition that its usefulness would not be materially impaired, in violation of Comp. Laws 1909, sections 1360, 7498, evidence examined and **held,** that, as there was evidence reasonably tending to prove the condition of the highway at the place of the accident, prior to the construction of the crossing at which the injury occurred, and that the same had not been restored, the court did not err in submitting to the jury the question of whether it had been restored. **Held,** further, that section 7498, **supra,** was applicable to a railway crossing constructed prior to its enactment.

2.    **NEGLIGENCE — Imputed Negligence — Automobile Accident — Negligence of Driver.** The contributory negligence of the chauffeur cannot be imputed to one who is traveling in the vehicle with him by invitation of the owner of the car. To render one

liable for the negligence of the chauffeur, either the relation of master and servant or principal and agent must exist. or the parties must be engaged in a joint enterprise, whereby responsibility for each other's acts exists.

3. **NEGLIGENCE—Imputed Negligence—Joint Enterprise.** .Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of 'the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control or management.

4. **RAILROADS—Injuries at Crossings—Automobile Accident—Proximate .Cause.** In a suit in damages for personal injuries, where the evidence discloses that, at the place of the injury, defendant's track ran practically east and west and intersected the public highway at right angles on about a five-foot grade; that 'the highway was carried over the railroad on a crossing, and sloped back on both sides of the track for a distance of some 20 feet; that about that distance south and parallel to the track, and some three or four feet under the surface of the highway, defendant had placed a culvert, consisting of pipe about 18 inches in diameter and about 25 feet long, for the purpose of conveying the water from the hills south and east of the railroad into a creek some 40 or 50 feet from its west end; and that, at the time of the injury the water, in flowing through the culvert and falling from the west end of the pipe, had made a hole some 20 or 30 feet in diameter down to the level of the water in the creek, a distance of some 18 feet, and had caused the dirt over that end of the pipe to sink and encroach upon the highway to such an extent that, while the wagon track of the highway ran straight from the crossing up to the hole, it deflected to the left around the hole, which was obscured by weeds and undergrowth; and that, on the day of the injury, deceased and two others were riding as guests of the owner in the back seat of an automobile, going south along this highway; that over the chauffeur, in the front seat, he had no control; that the car mounted the crossing between the rails of defendant's railroad slowly and a little to the west of the traveled way; that, after the front wheels had crossed the south rail, the chauffeur, having dropped the magneto key on the floor of the car, with his right hand still grasping the steering wheel, reached to pick it up and that, while so doing, he deflected the car so far to the right as to run to the edge of the hole, where it slipped on the crumbling earth and fell into the hole, and in falling turned over and killed deceased—**held,** that the negligence of the defendant in leaving the hole in the highway was the proximate cause of the injury.

5. **NEGLIGENCE—"Proximate Cause"—Concurrent Act.** Where the negligence of defendant and the act of a third person concur to produce the injury complained of, so that it would not have happened in the absence of either, the negligence is the proximate cause of the injury.

6. **RAILROADS—Injuries at Crossings—Action for Damages—Instructions on Care Required.** That part of the charge which made it the absolute duty of defendant to keep the hole in question "free from weeds, brush, or other obstruction, or to erect such barriers as would reasonably be calculated to prevent the driving or falling in such hole by persons traveling that highway," was not error in that it placed too high a degree of care on defendant.

7. **NEGLIGENCE—Imputed Negligence—Contributory Negligence—Question of Law.** On the undisputed facts in this case, the question of imputed negligence was one of law for the court, and not a question of contributory negligence required to be left to the jury as a question of fact, by Const. art. 23. sec. 6.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Geo. W. Clark, Judge.*

Action by Harriett Alma Bell against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *J. H. Grant,* for plaintiff in error.

*Harris & Nowlin,* for defendant in error.

TURNER, J.   On December 21, 1910, Harriett Alma Bell, widow of Fred Bell, deceased, for herself and Mary Alma Bell, their only child, in the district court of Oklahoma county, sued the St. Louis & San Francisco Railroad Company in damages for personal injuries resulting in the death of the said Fred Bell.   The petition as amended, after alleging the corporate existence of defendant and that on October 28, 1910, it was operating a line of railroad in this state through Spencer to Oklahoma City, substantially states that on said day deceased was riding

as a guest in an automobile driven by one Du Bose along
the public highway; that, after the car had crossed de-
fendant's tracks at right angles going south on a crossing
one-half mile west of Spencer, and while descending the
south side of its roadbed, the driver of the car ran it
upon the brink of a hole in the highway, negligently left
open by defendant in violation of the statute, and into
which it fell and in falling overturned and killed said
Bell, to plaintiff's damage and that of her child in a sum
certain.  For answer, defendant, after a general denial,
alleged that the injury, if any, was the result of the negli-
gence, not of defendant, but of the driver of the car and
also of the contributory negligence of deceased.  After
reply filed, in effect a general denial, there was trial to
a jury and judgment for plaintiff, and defendant brings
the case here.

At the close of all the evidence the court, in effect,
instructed the jury (No. 5) that it was the duty of de-
fendant in constructing a crossing for its railroad over a
public highway to restore the highway to its former state,
or to such condition that its usefulness would not be ma-
terially impaired, and thereafter maintain the same in
such condition against any effects in any manner pro-
duced by the railroad.  He also told the jury that it was
the further duty of defendant to construct a crossing
across that portion of its tracks, roadbed, or right of way
over which any public highway might run, and maintain
the same, unobstructed, in a good condition for the use of
the public, and to build and maintain in good condition
all culverts that might be necessary on its right of way at
such crossings, and that a failure so to do was negligence.
No complaint is made that such is not the law, but it is
assigned that the evidence was insufficient to support the

charge, in that there was no evidence reasonably tending to prove the condition of the highway at the place of the accident, prior to the construction of the crossing, and hence none to show that it had not been restored within the contemplation of Comp. Laws 1909, sec. 1360. There is no merit in this contention, for the reason that the evidence, considered with the photographs, discloses that, prior to the construction of this crossing, the road, at the precise point where the injury occurred, instead of being a hole, was a fairly level, well-traveled public road upon a section line. Neither is there merit in the contention that the charge was inapplicable for the reason that the crossing in question was already established before section 7498 of Comp. Laws 1909 was passed. This for the reason stated in *City of Yonkers v. N. Y. C. & H. R. Co.*, 165 N. Y. 142, 58 N. E. 877, where the court, construing a similar statute in view of a like contention, said:

"It is quite true, as the learned counsel for the defendant contends, that this statute is prospective in its operation. It had no application to proceedings in the court pending prior to its enactment. * * * It is quite clear, however, that it is not limited in its application to railroads, constructed subsequent to its enactment, or to bridges over crossings thereafter constructed. It was manifestly intended to apply to objects in existence at the time of its enactment, and consequently to all bridges constituting the highway at railroad crossings, whether constructed after the law went into effect or before. The purpose of the statute was to insure greater safety at such highway crossings, and that object could not be effected without applying the law to all such bridges existing at the time that it went into effect, without regard to the date of their construction."

See, also, *Bush v. D., L. & W. R. R. Co.*, 166 N. Y. 210, 59 N. E. 838.

Continuing, the court, in the same instruction, charged:

" * * * And if you find and believe from a preponderance of the evidence that the defendant railway company failed in the performance of any of its duties as above outlined, and that by reason thereof such a condition was created, caused, or permitted to exist at said crossing, and on said right of way, as that the said Fred Bell lost his life on or about the date mentioned in plaintiff's petition, and that but for the existence of said conditions at said crossing the said Fred Bell would not have lost his life, as aforesaid, then the court instructs you that negligence of the defendant company, if such you find existed, was the proximate cause of the death of said Fred Bell, regardless of any acts or conduct of the driver of the automobile in which the said Bell was riding, and your verdict should be for the plaintiff, unless you find from a preponderance of the evidence that the said Fred Bell failed to use ordinary care for his own safety, as explained in these instructions, but for which failure of care, on the part of said Bell, the accident would not have happened."

Which means that, if defendant failed to perform its said statutory duty and in consequence thereof deceased was injured, its failure so to do was the proximate cause of the injury, independent of any act on the part of the driver of the car, and that plaintiff should recover, provided, of course, deceased was not guilty of contributory negligence. This is the law. The jury was not concerned with the negligence of the driver. Assuming that the doctrine of imputed negligence is recognized in this jurisdiction under a proper state of facts, the jury was not concerned with the negligence of the driver, for the reason that, if negligent, his negligence cannot be imputed to Bell, as we shall later see. That being true, the court did right to lay the negligence of the driver out of the case

and leave it to the jury to say whether defendant violated its statutory duty as charged, and, if so, to declare, as a matter of law, that such was negligence and the proximate cause of the injury.

But it is contended, assuming the negligence of defendant as charged, such was not the proximate cause of the injury as a matter of law under the facts in this case, and the court erred when he so charged. This sends us to the facts. Essential to the determination of this question, they are few and undisputed. The evidence discloses that, at the place of the injury, defendant's track runs practically east and west and intersects the public highway at right angles on about a five-foot grade; the highway being carried over the railroad by a crossing, the dirt road sloping back on both sides of the track for a distance of some 20 feet. About that distance south of and parallel with the track, and about three or four feet under the surface of the highway, defendant had placed a culvert, consisting of a pipe some 18 inches in diameter and 25 feet long, in order to convey the water from the hills south and east of the railroad into a creek some 40 or 50 feet from its west end. At the time of the injury, the water, in flowing through the culvert and falling from the west end of the pipe, had made a hole some 20 or 30 feet in diameter down to the level of the waters of the creek, a distance of some 18 feet, and had caused the dirt over that end of the pipe to sink and encroach upon the highway to such an extent that, while the wagon tracks in the road ran straight from the crossing up to it, they deflected to the left around the hole, which was obscured by weeds and undergrowth. The evidence further disclosed that, on the day of the injury, deceased with two others was riding as a guest of the owner in the back seat of an automobile

going south along this highway; that over the driver, in the front seat, he had no control; that the car mounted the crossing between the rails of defendant's track slowly and, selecting the best part of the crossing, a little to the west of the traveled way; that, after the front wheels had crossed the south rail, the driver, having dropped his magneto key on the floor of the car, with his right hand still grasping the steering wheel, reached to pick it up, and that, while so doing, still going slowly, he deflected the car so far to the right as to run upon the edge of the hole, where it slipped upon the crumbling earth and fell into the hole and, in falling, turned over and killed deceased. The act of the driver in so deflecting his car was the cause of the fall; but, as that act would not have resulted in injury but for the negligence of defendant in leaving the hole in the highway, the negligence of defendant was the proximate cause of the injury.

In *Bales v. McConnell et al.*, 27 Okla. 407, 112 Pac. 978, 10 L. R. A. (N. S.) 940, plaintiff was employed about a corn sheller, operated by cogs negligently left unguarded, when he slipped from a wagon and fell, and, upon alighting on the ground near the cogs, to steady himself, thrust out his hand, which was caught in the unguarded cogs. In determining, as a matter of law, the proximate cause of the injury, we said:

"That which caused plaintiff to slip from the wagon was the cause of his fall, but the negligently unguarded cogs were the proximate cause of his injury."

In that case we cited *Postal Tel., etc., Co. v. Zopfi*, 93 Tenn. 369, 24 S. W. 633, where, as to proximate cause, the court said:

"A familiar illustration is the fall of a person upon an ice-covered pavement into an open cellar. In such case,

the ice is the cause of the fall, but the open cellar may cause an injury which, but for it, would not have occurred."

In that case, plaintiff sought to recover for personal injuries sustained by his minor daughter. The facts were that defendant had negligently left a telegraph pole lying between the platform and the first stepping stone leading from plaintiff's front gate to the pike. His little daughter, on her way home from school on a rainy day, in stepping over the pole to pass in at the gate, stepped upon the platform, slipped, lost her balance, fell upon the pole, and was injured. It was held that the negligence of the company, in leaving the pole where it was, was the proximate cause of the injury. Quoting approvingly from *Anderson v. Miler*, 96 Tenn. 35, 33 S. W. 615, 31 L. R. A. 604, 54 Am. St. Rep. 812, we said:

"In *Postal Tel. Co. v. Zopfi*, 93 Tenn. 374 (24 S. W. 633), the same distinction is illustrated where the fall of a young girl was caused by the slippery condition of a walkway, but the injury proximately resulted from the telegraph company negligently leaving its pole where she fell upon it, and received an injury which would not have resulted but for the presence of the pole, even though she had fallen. In that case a hypothetical case is put to further illustrate the distinction of a person falling upon an ice-covered pavement into an open cellar. In such case, the ice is the cause of the fall, but the open cellar may cause an injury which, but for it, would not have occurred"

—and cited other cases in support of our holding. Among others was *Campbell v. City of Stillwater*, 32 Minn. 308, 20 N. W. 320, 50 Am. St. Rep. 567, concerning which we said:

"* * * The material allegations of the complaint were that the railroad company, with the consent and per-

mission of the defendant city, had its track and operated its railroad along the side of, and in places lengthwise upon, one of the streets of the city; that, owing to its construction, it was a dangerous place for a horse with a carriage to go upon; that it was without fence or barrier between the part of the street occupied by the track and the part not so occupied to prevent horses running upon it; that, as plaintiff in his buggy was driving his horse along the street near said part of the track, his horse, suddenly frightened by a car moving along the track and notwithstanding plaintiff's efforts to prevent him, ran upon the track where it was laid on and along the street, overturned the buggy, and injured plaintiff. One of the grounds of demurrer, which was sustained, was that the frightening of the horse by the moving car, and not the negligence of the city to properly guard the street, was the proximate cause of the injury, but the court held not so, and reversed the trial court."

In *Walrod v. Webster County*, 110 Iowa, 349, 81 N. W. 598, 47 L. R. A. 480, the facts were that plaintiff was driving a team over a bridge, and, when near the north or bridge end of the approach, the off horse became frightened by a flash of lightning, and, squatting or setting back in the harness, guided or pushed the near horse against the railing of the approach, which gave way and precipitated horses and driver over the side of the approach and down to the ground beneath, resulting in the injuries of which plaintiff complained. As to the proximate cause, in the syllabus, it is said:

"Defects in the railing of a bridge were the proximate or efficient cause of the accident, when the railing was broken by a team of horses, one of which was frightened by a flash of lightning, if the accident would not have happened had the railing been sufficient, although, on the other hand, it would not have happened except for the lightning."

Which case, we think, is precisely in point for the reason that it is, in effect, there held that, while it was the lightning which deflected the team against the railing and caused the fall, as the deflection would not have resulted in injury but for the negligence of defendant in failing to maintain a sufficient railing, the negligence of defendant in failing so to do was the proximate cause of the injury. The most that can be said in favor of defendant in this connection is that the act of the driver in deflecting his car as stated concurred with the negligence of defendant to produce the death of Bell. Assuming such to be true, defendant's negligence was nevertheless the proximate cause of the injury; for, as stated in *Moore v. Jefferson City Light, etc., Co.*, 163 Mo. App. 266, 146 S. W. 825, quoting approvingly from *Johnson v. Northwestern Exp. Co.*, 48 Minn. 433, 51 N. W. 225:

"Where the negligence of the defendant and the act of a third person concurred to produce the injury complained of, so that it would not have happened in the absence of either, the negligence was the proximate cause of the injury."

We are therefore of opinion that the instruction states the law.

We said awhile ago that the negligence of the driver, if any, could not be imputed to Bell. And this is true, for the reason that the undisputed facts disclose that Bell was riding in the car as a guest, at the invitation of the owner, and had no control over the driver. When such are the facts, 29 Cyc. 548, lays down the rule thus:

"While there are some decisions to the contrary, the great weight of authority is that the negligence of the driver of a private conveyance will not be imputed to a person riding with him but who has no authority or control over him, such as that of master and servant. To

create the imputation of negligence, the passenger must have assumed such control and direction of the vehicle as to be considered practically in the exclusive possession of it. Merely making suggestions as to the route to be taken, or warning the driver of the danger, does not amount to sufficient authority or control. The negligence of the driver will not be imputed to persons on the vehicle at the invitation of the owner. * * *"

In *Anthony v. Kiefner et al.,* 96 Kan. 194, 150 Pac. 524, L. R. A. 1915F, 876, a mother and son were sued in damages for personal injuries inflicted by an automobile driven by the son. There was judgment against them both. Of the mother's contention, the court said:

"She insists that she was a mere guest or passenger in the automobile, and that the negligence of Lynn Kiefner, the owner and driver of the automobile, is not imputable to her. If she was only a guest of his and had no control of the automobile or of the operator, his negligence cannot be imputed to her. It was determined in *City of Leavenworth v. Hatch,* 57 Kan. 57, 45 Pac. 65, 57 Am. St. Rep. 309, that a person riding in a private conveyance by invitation of its owner is not responsible for his action, and that his negligence which contributes to an accident cannot be imputed to the guest. In *Reading Township v. Telfer,* 57 Kan. 798, 48 Pac. 134, 57 Am. St. Rep. 355, a man accompanied by his wife was driving over a defective highway, and she was injured. In her action to recover from the township, it was insisted that her husband was guilty of contributory negligence, and that she was chargeable with his negligence. There was no personal negligence on her part, but it was claimed that in a sense her husband was her agent, that the visit was undertaken on her solicitation, and that therefore negligence on his part which contributed to the injury was imputable to her. Upon these claims, the court said: 'The fact, if it be such, that the journey was undertaken at the solicitation of the wife possesses no weight. It cannot

be that one, who merely secures from another the favor of transportation in a private vehicle, takes upon herself or himself all risk of the driver's negligence en route. To so hold would minimize the problem for consideration into a mere question of fact as to which of the travelers solicited the other, the one the favor of journey, or the other the pleasure of company. If the one who asks to be carried hence is the master, so on the other hand the other who invites to a ride is also the master. If the maiden who begs of her escort a carriage drive is the mistress throughout the journey, so the gallant who invites his lady would likewise be the master until her safe return. It may be conceded that persons of mutual purpose and equal privileges of discretion and control, who travel in the same vehicle in pursuit of a common object, are the agents of each other in such a sense that the negligent act of one, in furtherance of the common scheme, is imputable to all; but such mutuality or equality of direction and control does not exist in the case of a journey taken by husband and wife.' 57 Kan. 801, 48 Pac. 135, 57 Am. St. Rep. 355.

"It was there recognized that there was a conflict in the authorities upon the question, but it was held that negligence could not be imputed to a guest or passenger, and it was further stated that: 'The doctrine of imputable negligence, except when countenanced by statute, is a fiction of the law which finds small favor with the courts, and has been very infrequently applied in our own.' 57 Kan. 803, 48 Pac. 136, 57 Am. St. Rep. 355.   *   *   *

"In the late case of *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555 (Ann. Cas. 1915B, 764), a man was riding in an automobile as the guest of the driver. In a collision with a railway train, the occupants of the automobile were killed. The wife of the guest brought an action on the basis that her husband's death was due to the negligence of the railway company. It was claimed by the railway company that the collision resulted from the negligence of the driver of the automobile, and that the guest was

chargeable with his negligence. In speaking of the claim, the court said: 'The doctrine that one, who voluntarily becomes a passenger in a conveyance, thereby so far identifies himself with the driver that he cannot recover for an injury negligently inflicted by a third person, if the driver's negligence was a contributing cause, never gained much of a foothold in this country, and is now repudiated in England, where it originated. The history of its rise and decline is traced in a note in 8 L. R. A. (N. S.) 597, where cases are gathered illustrating all phases of the subject. Save in a few jurisdictions, the negligence of a driver cannot be imputed to a passenger who in fact has no control over him. Note, 9 Ann. Cas. 408; note, 19 Ann. Cas. 1225; note, Ann. Cas. 1913B, 684. See, also, *Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558, 47 L. R. A. (N. S.) 820 [Ann. Cas. 1915B, 638]. This rule applies in the case of a guest who is riding with the driver for their mutual pleasure. 29 Cyc. 548-550; note, 8 L. R. A. (N. S.) 648; 7 A. & E. Encycl. of L. 447, 448.' 90 Kan. 75, 133 Pac. 556 [Ann. Cas. 1915B, 764.]"

In the Corley Case, *supra*, the court also said:

"Save in a few jurisdictions, the negligence of a driver cannot be imputed to a passenger who in fact has no control over him. * * * This rule applies in the case of a guest who is riding with the driver for their mutual pleasure."

In *Withey v. Fowler Co.*, 164 Iowa, 377, 145 N. W. 923, in the syllabus, it is said:

"To impute a driver's negligence to an occupant of his carriage, the relation between them must be something more than that of host and guest, and the mere fact that both have engaged in the drive because of mutual pleasure does not materially alter the situation."

In *Cahill v. Cincinnati, etc., Ry. Co.*, 92 Ky. 345, 18 S. W. 2, in the seventh paragraph of the headnotes, it is said:

58—4

"The contributory negligence of the driver of a vehicle cannot be imputed to one who is traveling in the vehicle with him by his invitation. To render one liable for the negligence of the driver of a vehicle in which he is traveling, either the relation of master and servant or principal and agent must exist, or the parties must be engaged in a joint enterprise whereby responsibility for each other's acts exists."

More could not be said in support of a doctrine so well settled. And the court did not err in refusing to submit to the jury the question of whether the deceased, at the time he was killed, was engaged in a joint or common enterprise with the driver of the car as requested (instruction No. 6). This for the reason that there was no evidence from which a joint enterprise might have been reasonably inferred. On this point there is no dispute as to the facts. The evidence discloses that, on the day of the injury, one Powell was the owner of an automobile; that he and his wife lived in Oklahoma City and had two lady friends visiting them; that a young man named Du Bose had been teaching Powell how to drive his car; that on that day Powell and his wife and his visitors planned an automobile trip in the country to purchase some chickens and eggs; that about noon that day Powell, finding it impossible for him to go, arranged with Du Bose to drive the car, which he did, the party consisting of the driver, Mrs. Powell, and the two lady visitors; that the party started from Powell's residence and drove to a garage in the city for gasoline; that there Du Bose suggested to Mrs. Powell to invite deceased to be their guest on the drive, to which she agreed, and suggested that he be asked to bring his gun along, as he was an expert rifle shot; that thereupon Du Bose telephoned the invitation from the garage, which was accepted, where-

upon the party drove to his residence, where he joined them. The evidence further discloses that, on the journey, Du Bose and Mrs. Powell occupied the front seat of the car, the rear seat being occupied by the deceased and the two lady visitors; that the party drove east to Spencer and, after spending a short time at the club grounds, started to return to the city, the passengers still being seated in the car as stated; and that, in crossing the defendant's line of road on the way home, the accident occurred as stated. Assuming that the trip was a "joy ride," as contended, it was not a joint or common undertaking.

In *Atwood v. Utah Light & Ry. Co.*, 44 Utah, 366, 140 Pac. 137, the court, quoting approvingly from *Cotton v. Willmar & S. F. Ry. Co.*, 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, said:

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

It follows that, as the negligence of the driver cannot be imputed to the deceased, the court did right to decide that question on the undisputed facts as a matter of law, and that the question so decided was not a question of contributory negligence, required to be left to the jury as a question of fact by Const. art. 23, sec. 6, as contended by defendant.

Did the court err in further charging thus:

"No. 7. It was not only the duty of the railroad company to so construct and maintain the said highway upon

its right of way and said crossing as to prevent the washing or creation of a deep hole in said highway, or in close proximity to the traveled portion thereof, but it was also its duty to keep any such dangerous place free from weeds, brush, or other obstruction, or to erect suitable barriers as would reasonably be calculated to prevent the driving or falling into said hole by persons traveling that highway, and if it was neglect on the part of the railroad company of its duties, as herein explained, which was the direct and proximate cause of said accident, then the defendant railroad company is responsible for the consequences thereof, unless you shall further find from the evidence that the said deceased was guilty of contributory negligence, as set out in these instructions."

Defendant says the court did err, because, it is urged, that part of the charge which made it the duty of defendant to keep the hole in question "free from weeds, brush, or other obstruction, or to erect suitable barriers as would reasonably be calculated to prevent the driving or falling into said hole by persons traveling that highway," placed too high a degree of care on defendant, who insists that the company was chargeable with ordinary care only in maintaining the highway at that point, and the question of whether it exercised that degree of care only should have been left to the jury. But the charge is substantially in keeping with the spirit of the statute. Section 1360, *supra,* made it the duty of defendant to restore this highway at the point in question "to its former state, or to such condition as that its usefulness shall not be materially impaired," and to keep it that way "against any effects in any manner produced by" its railroad. Now, if the statute had intended to charge defendant with the exercise of ordinary care only so to do, it would have said so. As it is, the statute is peremptory and reads, "shall restore," and "thereafter" shall "maintain." Besides, as this cul-

vert was in aid of, if not a part of, its crossing across its right of way, section 7498 made it the duty of defendant to "maintain the same unobstructed, in a good condition for the use of the public." "Shall" construct "and maintain unobstructed" is the language of the statute, and not that defendant shall exercise ordinary care only so to do, as defendant would have us believe.

There being no contention that the court erred in charging on contributory negligence, or, indeed, that deceased was guilty of any, and no merit in the remaining assignments of error, the judgment of the trial court is affirmed.

All the Justices concur, except THACKER, J., not announcing.

THACKER, J. (concurring). I concur in the conclusion reached in this case; but I am not satisfied with the manner in which the question of imputed negligence is treated, and cannot agree that it "was one of law for the court, and not a question of contributory negligence to be left to the jury as a question of fact." The essential facts are stated in the opinion of the court.

In Black's Law Dictionary (2d Ed.) 810, it is said:

"Contributory negligence, when set up as a defense to an action for injuries alleged to have been caused by the defendant's negligence, means any want of ordinary care on the part of the person injured (or on the part of another whose negligence is imputable to him), which combined and concurred with the defendant's negligence, and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred. *Railroad Co. v. Young,* 153 Ind. 163, 54 N. E. 791; *Dell v. Glass Co.,* 169 Pa. 549, 32 Atl. 601; *Barton v. Railroad Co.,* 52 Mo. 253, 14 Am. Rep. 418; *Plant Inv. Co. v. Cook,* 74 Fed. 503, 20 C. C. A. 625;

*McLaughlin v. Electric Light Co.*, 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; *Riley v. Railway Co.*, 27 W. Va. 164."

If the negligence of a third party was such an independent intervening cause as to prevent the negligence of a defendant from being regarded a proximate cause of plaintiff's injuries, there would be no occasion, of course, to impute such third party's negligence to the plaintiff to prevent his recovery, as there would be an absence of actionable negligence on the part of the defendant; and it is only where the negligence of a third party is contributory that the question of imputing it to a plaintiff can arise; when imputed to a plaintiff, such negligence becomes his own contributory negligence, of course. Imputed negligence is not a distinct and independent defense in any case, but is a feature and part of the defense of contributory negligence as shown by the above quotation. The question of imputed negligence is foreign to any issue in this case, and ought not to have been discussed unless involved in the defense of contributory negligence, which is relied upon by the defendant for relief against its actionable negligence; and the treatment of this question, in the opinion of the court, shows beyond question that it is involved in and arises out of this defense.

The defense of contributory negligence cannot arise, of course, in any case unless the defendant has been guilty of actionable negligence, that is, negligence which, but for such defense, would render it liable for damages to the plaintiff (*St. Louis & S. F. R. Co. v. Long*, 41 Okla. 177, 137 Pac. 1156, Ann. Cas. 1915C, 432); but when a defendant pleads this defense in a case where the legal effect of its existence would defeat the action, and there

is evidence of actionable negligence on the part of the defendant, the court should leave the whole question of the existence of contributory negligence, including the question of imputed contributory negligence, to the jury.

Section 6, art. 25 (Williams', sec. 355) of the Constitution of Oklahoma, reads:

"The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

This provision of our Constitution was evidently intended to effect some change in the pre-existing law, or in what would otherwise be the law of this state; and, as no such provision was necessary to make all questions of fact in such defenses questions to be left to the jury, it seems too obvious to admit of extended discussion that the intent was to convert into questions of fact, to be determined by the jury, what otherwise had been, or would be, in this state questions of law for the judge. Without this provision in our Constitution, whenever, as a matter of law, the evidence was conclusive that the plaintiff had been guilty of contributory negligence (whether directly or by imputation) or whenever, as a matter of law, there was no evidence or not sufficient evidence of such negligence, or any essential element thereof, to sustain this defense, the judge, with authority, might so direct the jury; but not so under this provision of our Constitution. If this provision of our Constitution means less than this, it means practically nothing; and, if the opinion of the majority of my Associates, which treats a question as to an element of the defense of contributory negligence in this case as a question of law just as if there were no such constitutional provision, is allowed to stand, its logical effect will be to strike down this provision of our Con-

stitution or, at least, to leave it merely declaratory of what was theretofore and would still be the law without it. In this, this decision is in conflict with all past decisions of this court touching this question. It must be clear from this provision of the Constitution that the defense of contributory negligence has been stripped of all those legal presumptions and conclusions formerly indulged and drawn by courts and reduced to a question of fact for the jury. See *St. Louis & S. F. R. Co. v. Long, supra.*

Imputed negligence, like every other element of contributory negligence, existed in fact before it had, and independent of, legal sanction; and the effect of this provision of our Constitution upon its elemental character is to leave it where the law found it, that is, a question of fact. It must be obvious that, under some circumstances, the negligence of one party may be imputable to another as a matter of fact, wholly independent of any question of legal sanction or effect; and, under our Constitution, as formerly, a plaintiff may, in fact, be guilty of contributory negligence, either directly or through another whose negligence is in fact imputed to him, with the legal effect that it defeats his right to recover; but the whole question as to whether he is so guilty is one of fact for the jury.

In *St. Louis & S. F. R. Co. v. Hart,* 45 Okla. 659, 146 Pac. 436, in discussing this section of the Constitution, it is said:

"It is obvious, however, that this section does not contemplate that a plaintiff, seeking damages for personal injuries, is entitled to recover regardless of the question of fault or negligence on his part. We take it that, if the evidence conclusively shows that such an one deliberately walked in front of a moving train with suicidal intent and was killed (injured), it would be the duty of the courts,

trial or appellate, to set aside a verdict in his favor and grant a new trial."

The opinion in that case does not predicate the statement quoted upon any power of the court to pass upon the existence or sufficiency of evidence of contributory negligence, but is based upon the view that such a state of facts negatives the existence of actionable negligence on the part of the defendant, as will clearly appear from the following additional excerpt from the same:

"If the plaintiff permitted a train approaching at that gate to run him down and injure him, there being nothing to prevent him from getting out of the way, the court probably would be justified in reversing the verdict in his favor and remanding the cause for a new trial, upon the grounds that there was no evidence reasonably tending to support the same; but, having arrived at the conclusion that there was sufficient evidence of negligence on the part of the defendant to take the case to the jury on that question, it would seem to follow that it was for the jury to say whether the testimony of the plaintiff as to getting his foot caught between the plank and rail was sufficient explanation of why he did not retire to a place of safety, after he discovered that the train was backing toward him, to absolve him from the charge of contributory negligence. As we have said before, in this jurisdiction the question of contributory negligence is always for the jury. At most, the only function of the court is to define for the jury the meaning of the term 'contributory negligence,' as used in section 6, *supra*, and instruct them that it is always a question of fact for their determination. In no event is the court authorized to direct a verdict or sustain a demurrer to the evidence, upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law."

The earlier case of *St. Louis & S. F. R. Co. v. Long, supra*, is to the same effect. If, as is undoubtedly true,

"in no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law," it must necessarily follow that in no event is the court authorized to direct a verdict or sustain a demurrer to the evidence, upon the ground that it conclusively appears that the plaintiff is not guilty of contributory negligence as a matter of law —the constitutional rule must be allowed to work both ways and be equally available to either of the parties. If trial courts would confine their instructions for the guidance of juries in such cases to the question of actionable negligence on the part of defendants, instead of invading the province of the jury in respect to the question of contributory negligence, much danger of confusion and much risk of error would be avoided; and if this court would abstain from discussing when and what evidence does, and when and what does not, prove or tend to prove contributory negligence, and confine itself to the field left to it by the constitutional provision under consideration, a clearer understanding of the law in this regard would result. See *Gelruth v. Charles T. Derr Construction Co.,* 51 Okla. 103, 151 Pac. 875.

It may be thought at first blush that this view would lead to the conclusion that, where the undisputed evidence shows actionable negligence on the part of a defendant, without any evidence whatever of contributory negligence on the part of the plaintiff, a trial court would be without power to set aside a verdict against plaintiff's right to recover and grant him a new trial; but no such result would ordinarily follow. It may also be thought at first blush that this view would lead to the conclusion that, where the undisputed evidence shows contributory negligence on the

part of a plaintiff, the court would be without power to set aside a verdict against defendant and grant him a new trial; but no such result would ordinarily follow. In either such case, such evidence of passion or prejudice would no doubt cause the trial judge to exercise the utmost care to see that, in respect to the primary question of actionable negligence, the verdict is justified; and, if there is no ground for setting the same aside, as against the evidence or the weight thereof upon this primary question, as where the pleadings or uncontroverted evidence left no question but that of contributory negligence to be determined by the jury, such a manifestly wrong verdict would ordinarily, at least, be attended by facts and circumstances which would bring the case within the discretionary power of the court to set aside the verdict and grant a new trial, upon the ground of "irregularities" or "misconduct" on the part of the jury within the meaning of the first or second subdivision of section 4196, Statutes 1893 (sec. 5033, Rev. Laws 1910), specifying causes for which a new trial may be granted. If, for instance, the jurors, upon examination as to their qualifications, had denied that they had any bias or prejudice, such a verdict, unsupported by any evidence or contrary to all the evidence, might tend to show that they had wrongfully qualified and were guilty of misconduct in this respect, and might entitle the party against whom the verdict was rendered to a new trial; and such bias or prejudice would ordinarily be referable to and tend to sustain some proposition under which the trial court might, in the exercise of its wide discretion, grant a new trial under the statutory causes therefor. See *Soper v. Medberry,* 24 Kan. 128; *Kelley v. Penn. R. Co.* (C. C.) 33 Fed. 857; *Bayliss v. Travelers' Ins. Co.,* 113 U. S. 320, 5 Sup. Ct. 494, 28 L. Ed. 989; 9 Fed. Stat. Ann. 349, 350.

This, of course, is upon the assumption that no other ground for granting a new trial appeared.

It does not follow that, because both parties are entitled to a jury verdict upon the defense of contributory negligence and every part of the same, it is not within the power of the court to set aside such a palpably wrong finding of the jury as to the existence or nonexistence of contributory negligence, when not fairly reached, as the mere granting of a new trial, and thus sending the case to another jury, is not a denial to either party of his constitutional right to have a jury determine the existence or nonexistence of this defense without undue interference from any court (*Devine v. St. Louis,* 257 Mo. 470, 165 S. W. 1014, 51 L. R. A. [N. S.] 860) ; and this provision of our Constitution was not intended and should not be construed to deprive the courts of general jurisdiction of their inherent power to grant new trials for statutory causes known to the common law which were intended to secure a fair verdict. As to this power in general, see 29 Cyc. 722; 2 Thompson on Trials (2d Ed.) sec. 3711, p. 1975, and notes; vol. 4, pt. 1, Minor's Institutes, 836, 837; 2 Jones' Blackstone, secs. 510, 513, pp. 1998-2006; *Arkansas Valley Land & Cattle Co. v. Mann,* 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854; *Clark v. Great Northern R. Co.,* 37 Wash. 537, 79 Pac. 1108, 2 Ann. Cas. 760, and notes thereto; *McMahon v. Rhode Island Co.,* 32 R. I. 237, 78 Atl. 1012, Ann. Cas. 1912D, 1229, and notes. Courts, in order to secure fair trials, often grant new trials where there is nothing to be determined except questions of fact within the exclusive province of the jury, and where the question must ultimately be determined by a jury; and the fact that it has long been the rule that the judge must ultimately yield to the jury in such cases

is shown by the following statement in 2 Jones' Blackstone, 510, p. 1998 (287):

"If two juries agree in the same or a similar verdict, a third trial is seldom awarded; for the law will not readily suppose that the verdict of any one subsequent jury can countervail the oaths of the two preceding ones."

And in *Devine v. City of St. Louis*, 257 Mo. 470, 165 S. W. 1014, 51 L. R. A. (N. S.) 860, it is held:

"The constitutional right to trial by jury is not infringed by the granting by the court of a new trial for the award of excessive damages by the jury."

This is true although the jury must ultimately determine the amount of damages. But if, in any case, the court has no such power to relieve from a finding unsupported by any evidence or against sufficient undisputed evidence, such a case is exceedingly improbable; and it may be said that, if the jury would be free to commit absurd errors and return false verdicts not subject to review, they are no more free to err than are the courts in respect to the ultimate powers intrusted to them. In any event, it seems very clear under this section of our Constitution that the entire defense of contributory negligence is one of fact, and that both parties are entitled to have the same and every part thereof determined by a jury, without any further instruction from the court than is permitted by the two cases first herein cited. The whole question of the existence or nonexistence of contributory negligence is for the jury, and their conclusion upon it, when fairly reached, is not re-examinable—their finding is conclusive. See 9 Fed. Stats. Ann. 349.

It follows from the foregoing views that, in my opinion, the court erred in instructing the jury to the effect that the negligence, if any, of the driver of the automo-

bile in which Fred Bell, deceased, was riding at the time of the accident resulting in his death could not be imputed to the latter, notwithstanding such instruction appears to have been absolutely true, as this was an unwarranted invasion by the court of the exclusive province of the jury to determine the truth of the same—the instruction, being unauthorized, was impertinent though appearing to us to be true. And, although this instruction appears to us to have been true, and the jury would no doubt have so found without it, the error in my opinion probably constitutes a substantial violation of a constitutional right within the meaning of section 6005, Rev. Laws 1910, which reads:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury * * * unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of * * * constitutes a substantial violation of a constitutional * * * right."

But, although I have more doubts as to this, I am inclined to think that it does not follow that this case should be reversed on account of this error, as the error appears to have been invited by the defendant when, in its sixth requested instruction, it asks the court to invade the province of the jury in respect to the defense of contributory negligence and instruct it that, under the hypothetical case therein stated, the negligence of the driver of the automobile, in which Fred Bell, deceased, was riding at the time of the accident resulting in his death, should be imputed to the latter, and that plaintiff's right to recover should be denied. That a judgment will not be reversed on account of an error invited by the party asking reversal is well settled by the opinions of this court. *Standard*

*Marine Insurance Co. v. Trader's Compress Co.,* 46 Okla. 356, 148 Pac. 1019, *Wallace v. Duke,* 44 Okla. 124, 142 Pac. 308; *Brissey v. Trotter,* 34 Okla. 445, 125 Pac. 1119; *Ardmore Oil & Milling Co. v. Robinson,* 29 Okla. 79, 116 Pac. 191; *St. Louis & S. F. R. Co. v. Long, supra.*

It is true the defendant did not ask the instruction given, that asked by it being diametrically opposed to the one given, but it did ask the court to instruct upon the question of imputed negligence; and the error in the instruction given is in instructing at all upon this question.

I do not believe that such an error so invited would warrant a reversal of this case.