DALE A. MICHAEL, Respondent, v. KANSAS CITY WESTERN RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, January 22, 1912.

1. NEGLIGENCE: Street Railways: Firemen. Plaintiff, a Leavenworth fireman assisting the driver of a fire apparatus, in responding to an alarm of fire, was injured by the collision of the fire truck with a street car. There was evidence tending to show that the street car was running at the rate of twenty or twenty-five miles per hour and that the motorman made no effort to stop or reduce speed though he was at his post looking ahead and must have seen the team come out of the building and rush across the track, and must have heard the clamor of the fire bell, and that he could easily have stopped the car after he saw and heard these things and avoided the collision. *Held*, that the demurrer to the evidence was properly overruled.

2. ———: ———: ———. Motormen and others in charge of street cars must give way to fire engines, trucks, or wagons on the way to extinguish fires, and must hold themselves in readiness to avoid collisions when they have reason to anticipate that such engines, trucks or wagons may appear, as when they are approaching and passing a house in which they are kept.

3. ———: ———: ———. Fireman going to a fire are excepted from the general rule of law relating to the users of public thoroughfares, and are accorded a right of way over public streets superior to that enjoyed by pedestrians, drivers of horses, autoists and street car motormen.

Appeal from Jackson Circuit Court.—*Hon. James E. Goodrich*, Judge.

AFFIRMED.

*Scarritt, Scarritt & Jones* for appellant.

(1) Under the law of Kansas when two persons are riding on the driver's seat of a wagon, one of whom is driving, and are engaged in a common purpose with equal opportunity to see and appreciate the approaching danger from such objects as approaching cars the negligence of the driver is imputable to his companion. Bush v. Railroad, 62 Kan. 709, 64 Pac. 614; Bussey v. Railroad, 66 Kan. 735, 71 Pac. 261; Railroad v. Holland, 60 Kan. 209, 56 Pac. 6; Union Railroad v. Adams, 33 Kan. 427, 6 Pac. 529; Railroad v. Wheelbarger, 75 Kan. 811, 88 Pac. 531; Honick v. Railroad, 66 Kan. 124, 71 Pac. 265; Dyerson v. Railroad, 74 Kan. 528, 87 Pac. 680. (2) Upon the fact found by the trial court that under the Kansas law the driver's negligence is imputable to plaintiff, and the other indisputable facts developed by the plaintiff's own testimony, the plaintiff cannot recover because of his contributory negligence. Railroad v. Holland, 60 Kan. 209, 56 Pac. 6; Railroad v. Wheelbarger, 75 Kan. 811, 88 Pac. 531; Hayden v. Railroad, 124 Mo. 566; Huggart v. Railroad, 134 Mo. 673; Sangui-

nette v. Railroad, 196 Mo. 466; Stotler v. Railroad, 204 Mo. 619; Reno v. Railroad, 180 Mo. 469; R. & E. Co. v. Baker, 126 Ala. 135, 28 So. 87. (3) Street car tracks and steam railroad tracks are equally signs of danger and demand equal prescience and vigilance to secure their own safety on the part of persons crossing such tracts. Burns v. Railroad, 66 Kan. 188, 71 Pac. 244; Boring v. Railroad, 194 Mo. 541. (4) The plaintiff by not submitting the case to the jury on instructions based on the last chance doctrine is conclusively held to have abandoned that theory and is concluded both in this case and in subsequent cases, if any, from relying upon that theory. Matz v. Railroad, 217 Mo. 275. (5) The language of the instruction predicating plaintiff's recovery on the fact that defendant negligently ran one of its cars at "a high, excessive and dangerous rate of speed considering the time, place and circumstance of the running of the said car," or upon the negligent operation of the car "without having said car under reasonable control, and without keeping a proper lookout ahead to avoid collisions, time, place and circumstances considered," is vague, indefinite and unrestricted, and therefore does not state a principle of legal liability on the part of the defendant. Casey v. Bridge Co., 114 Mo. App. 47; Johnson v. Railroad, 117 Mo. App. 308; Magrane v. Railroad, 183 Mo. 119; Campbell v. Transit Co., 121 Mo. App. 406; Allen v. Transit Co., 183 Mo. 411; Kohr v. Railroad, 117 Mo. App. 302. (6) The verdict is excessive. Haynes v. Trenton, 108 Mo. 123; Adams v. Railroad, 100 Mo. 555; Wood v. Railroad, 88 Fed. 44.

*Reed, Yates, Mastin & Harvey* for respondent.

(1) The case was tried upon the theory that the negligence of the foreman and driver Schroeder, if any, was imputable to the plaintiff. This theory was

more favorable to appellant than the rule of law warrants. Under the Misouri rule the negligence of the driver of a team is not imputable to a companion riding in the vehicle. Petersen v. Transit Co., 199 Mo. 331; Stotler v. Railroad, 200 Mo. 107; Conner v. Railroad, 149 Mo. App. 689. Even under the Kansas rule the negligence of the driver cannot be imputed to one riding with him, unless the latter had full control of the actions of the driver. Leavenworth v. Hatch, 57 Kan. 60; Busch v. Union Pacific Co., 64 Pac. 624. In this case the respondent had no control whatever over the driver. The record shows that he was "learning to be a driver as a fireman; that Schroeder, the driver, was the plaintiff's foreman, that respondent had never before made a run to a fire during the thirteen days that he had been connected with the department; that respondent was not allowed to drive because of a lack of familiarity with his position. As we have seen, the neglect of a driver is imputed to one riding in his company only upon the theory that the former has the right to exercise some control; that the relation of principal and agent must exist. And this is the Kansas rule. The neglect of the driver of a hose cart cannot be imputed to another fireman on the wagon with him. So held in every decided fireman case. McKernan v. Railway, 138 Mich. 519, 101 N. W. 812; Land Co. v. Mingea, 89 Ala. 521; same case, S. E. 666, where many authorities are cited and discussed. To the same effect in fire hose cart cases. Burleigh v. Transit Co., 124 Mo. App. 724; Geary v. Railway, 84 App. Div. N. Y. 5410; same case, 82 N. Y. Supp. 1017; Dole v. Railway, 121 La. 945, 46 So. 929. The negligence of a driver of an ice wagon cannot be imputed to a helper who had no control over horse. Anderson v. Railway, 30 Misc. Rep. N. Y. 104. In the Alabama case heretofore cited it is said that the rule holding that the neglect of a driver is to be imputed to a companion does not obtain where the companion rides with the driver without

authority to control him in the management of the team. Also see Birmingham Ry. v. Baker, 31 So. (Ala.) 618. There is no plea of contributory negligence as defined by Nephler v. Woodward, 200 Mo. 187. (2) The question of contributory negligence was for the jury, even if the alleged negligence of the foreman and driver is to be imputed to the plaintiff. All of the cases cited in appellant's brief as authority for the point that a demurrer to the evidence should have been sustained because of the contributory negligence of the driver Schroeder, are cases where neither the driver nor the plaintiff looked or listened for the approaching train that caused the injury. Failure to look and listen, under circumstances where to look and listen would have discovered the approaching train before driving upon the track, is held to be negligent as a matter of law in Kansas just as it is in Missouri, and everywhere else. Bussey v. Railroad, 71 Pac. 261. Even when car is coming at a high rate of speed the driver has the right to assume that the motorman will exercise due care and check car. Buhreus v. Dry Dock E. B. & B. Co., 53 Hun 571; s. c., 26 N. Y. Supp. 224. (3) The case was not submitted to the jury upon the humanitarian doctrine, nor do we now claim any right to recover upon any such theory of the case. (4) The instructions were as nearly perfect as they can well be made in a case of this character. But two were asked and given on behalf of plaintiff and the first instruction is criticised because, as alleged, certain language quoted therefrom is vague, indefinite and unrestricted, and does not state a principle of legal liability on the part of defendant. Moxley v. Railroad, 123 Mo. App. 84. (5) The verdict is not excessive. No case in appellant's brief is predicated upon an injury comparable to the one involved here, either for seriousness or per-

manency. Respondent's left leg was broken between
the knee and the ankle. The injury was received on
June 13, 1908. Upon trial, March 16, 1911, he was still
using crutches and had been able to do little or no
work since his injury. The injury left the ankle stiff
and inclined downward, and the limb was left so much
shorter than the other as to require a three and one-
half inch heel on the shoe, and a half-inch sole to facili-
tate its use. Seventy-five hundred dollars not exces-
sive. Railroad v. Brown, 18 S. E. (Va.) 280. Eight
thousand dollars not excessive. Funston v. Railroad,
16 N. W. (Ia.) 523. Fifteen thousand dollars not ex-
cessive. Mitchell v. Railroad, 24 N. Y. Supp. 33.

JOHNSON, J.—Plaintiff, a fireman employed in
the fire department of the city of Leavenworth, Kan-
sas, received personal injuries in a collision between a
combined hose and chemical wagon on which he was
riding and an electric street car operated by defend-
ant and, claiming that his injuries were caused by the
negligence of defendant, instituted this suit to re-
cover the damages he suffered in consequence of his
injuries. The answer includes a general denial, a plea
of contributory negligence and a further plea that
laws of the state of Kansas preclude a recovery in
all cases of personal injury where negligence of the
plaintiff contributed to the injury, regardless of the
nature of the negligence of the defendant.

Doubtless the purpose of this last plea was to in-
terpose a special defense to negligence pleaded in the
petition under what is known in this state as the last
chance doctrine, but since the issues  of such negli-
gence was abandoned at the trial and was not submit-
ted to the jury it will not be necessary to bestow fur-
ther attention upon it. A trial to a jury resulted in a
verdict and judgment for plaintiff in the sum  of $5,-
000, and the cause is here on the appeal of defendant.

The injury occurred in the afternoon of June 13, 1908, on Fifth street between Seneca and Shawnee streets in Leavenworth. Fifth street runs north and south and is intersected at right angles by the other two mentioned streets. An east and west alley fourteen feet wide bisects the block and just south of this alley and on the east side of Fifth street is the engine house of the fire department where plaintiff was employed. The house had three large entrances and its front wall was sixteen feet from the curb line on the east side of Fifth street. The wagon on which plaintiff was riding emerged from the north door which was five feet south of the alley. The pavement of Fifth street is forty feet wide and defendant operated a single track street railway along its center. Consequently the distance between the doorway of the fire house and the east rail of the track was between thirty-three and thirty-four feet. It was about 200 feet from the doorway to the north line of Seneca street. Fifth street was paved with brick and the sidewalk space in front of the fire house was paved with asphalt and sloped from the building to the street gutter. Plaintiff was thirty-one years old and had been employed by the fire department thirteen days before the injury. He was being taught the duties of a driver but had not completed his period of instruction and was not allowed to drive to a fire. An alarm of fire came in and plaintiff assisted in hitching the horses to the hose and chemical wagon and jumped on the running board, putting on his coat, as the team dashed forward. His foreman did the driving but sat on the left side of the driver's seat. As soon as plaintiff put on his coat he seated himself next the driver. The team plunged out of the house on a gallop and, on account of the narrowness of the street, the slope of the asphalt pavement and the presence of some vehicles on the east side of the street, the driver, whose

course required him to drive north, pointed the team due northwest, intending to cross the street car track to the west side of the street. According to the evidence of plaintiff a large bell on the fire house sounded the fire alarm before the wagon emerged from the building and as soon as they could see north on Fifth street, both plaintiff and the driver looked and saw a southbound street car at the north side of Seneca street or just in that street. This evidence places the front end of the street car about 200 feet from a point on the track directly in front of the north door of the fire house and as the team took a northwest course, about 155 feet from the place of collision. At this time the front end of the wagon where plaintiff was seated was approximately forty-five or fifty feet from the place of collision. Neither plaintiff nor the driver looked again towards the street car until the team reached the track when looking, they discovered that a collision was imminent. An instant later the car struck the front end of the wagon and plaintiff and the driver were thrown forward out of their seats. Plaintiff fell across the tongue of the wagon and sustained serious injuries. There is evidence tending to show that the street car was running at the rate of twenty or twenty-five miles per hour and that the motorman made no effort to stop or reduce speed though he was at his post looking ahead and must have seen the team come out of the building and rush across the track and must have heard the clamor of the fire bell. Further the evidence tends to show that the motorman easily could have stopped the car after he saw and heard these things and thereby have prevented a collision.

The evidence of defendant contradicts that of plaintiff in several vital particulars. It tends to show that the fire alarm was not sounded until after the wagon came out of the doorway; that the street car then was south of Seneca street, was running slowly

and that the occupants of the driver's seat on the wagon seemingly confused and unsettled in their positions, did not look in the direction of the car but drove right into it.

Passing to the law of the case our first consideration shall be the demurrer to the evidence which defendant argues should have been given and in our discussion of the questions thus raised, we shall look at the facts of the case only from the viewpoint of the evidence of plaintiff. The burden is on plaintiff to establish the fact, if it be a fact, that his injuries were directly caused by negligence of the motorman in the operation of the car. If his evidence fails to accuse the motorman of such negligence, or if it does thus accuse him but further discloses that unquestionably plaintiff was guilty of contributory negligence, plaintiff has no cause of action and must fail in his suit. The argument of counsel for defendant may be resolved into the following propositions: First, there is no evidence that negligence of the motorman caused the injury. Second, the evidence conclusively shows that plaintiff himself was guilty of negligence in entering the path of danger when by the exercise of ordinary care he might have discovered the danger and given timely warning to the driver and, third, the driver was negligent in plunging headlong and blindly across the track and that his negligence should be imputed to plaintiff.

In the discussion of these propositions counsel rightly assume that they are to be determined in the light of the Kansas law, and that if plaintiff has no cause of action under the law of the state where he was injured, he can have none in the courts of this state. [Chandler v. Railroad, 127 Mo. App. 34.] Defendant offered in evidence and relies in its brief upon the following decisions of the Supreme Court of Kansas as supporting its contention that plaintiff should have been non-suited. [Bush v. Railroad, 62 Kan.

709, 64 Pac. 624; Bussey v. Railroad, 66 Kan. 735, 71 Pac. 261; Railroad v. Holland, 60 Kan. 209, 56 Pac. 6; Railroad v. Adams, 33 Kan. 427, 6 Pac. 529; Railroad v. Wheelbarger, 75 Kan. 811, 88 Pac. 531; Honick v. Railroad, 66 Kan. 124, 71 Pac. 265; Dyerson v. Railroad, 74 Kan. 528, 87 Pac. 680.]

We find nothing in those cases at variance with the law of our own state. None of them deals with the subject of the rights and duties of firemen going to a fire. Ordinarily the law makes no distinction between the different classes of users of public thoroughfares. Pedestrians, drivers of horses, autoists and street car motormen have equal rights to the use of the streets and none will be allowed to assert superior rights over the others. And it is the duty of persons crossing street car tracks to employ their senses for their own protection and this duty continues until an attempted crossing has been safely made.

But the law wisely excepts firemen going to a fire from the operation of these almost universal rules. In some states the exception has received legislative recognition but it needs no statutory aid to give it force and vitality. Fire is the best of servants and the most tyrannical of masters. When escaping control it breaks out in thickly populated places its enormous capacity for evil and the rapidity of its expansion makes the performance of the task of regaining control over it one of general public concern and creates an imperative emergency that will brook no delay, however slight. Public servants employed to fight an enemy so dangerous, of necessity, must be accorded a right of way over the public streets superior to that enjoyed by the different classes to which we have referred. The rule thus is stated in 36 Cyc. 1513:

"It is the duty of the motorman or other person in charge of a street car to give way to, and to use due precaution to avoid colliding with, a fire engine, truck, or wagon on its way to extinguish a fire and save prop-

erty therefrom, and to hold himself in readiness to avoid such collision when he has reason to anticipate that such an engine, truck, or wagon may appear, as when he is approaching and passing a house in which they are kept. The exercise of such precaution may be and sometimes is required by a rule or regulation of the sreet railroad company, or by ordinançe or statute.''

Under this rule the evidence of plaintiff clearly discloses negligence on the part of defendant's motorman. Hearing the alarm and knowing that he was about to pass an engine house it was his duty to stop or bring his car under such control that it could be stopped instantly. Seeing the hose wagon° dash out of the house he had no right to assume, especially in the face of contrary appearances, that it would turn sharply to the right and avoid crossing the car track. It was his duty to give the wagon ample room and not impede or endanger its progress. Of the negligence of the motorman there can be no question, if the facts disclosed by the evidence of plaintiff are the true facts of the case.

As to the issues relating to the alleged negligence of plaintiff and the driver, we would not be justified in declaring as a matter of law that either was negligent. Here again ordinary rules must give way to necessity. Extreme haste and some initial confusion necessarily characterize the response firemen must give to an alarm. They must observe the care that an ordinarily careful and prudent person in their situation and circumstances would observe, but we would do wrong to hold that notwithstanding they had the right of way and were tensely occupied with the duties and dangers of a breakneck race they should continue to observe the street car and could not count on their right of way being respected by the motorman. The issues under consideration are presented by all the evidence as issues of fact for the jury to solve.

The demurrer to the evidence was properly overruled.

Counsel for defendant object to instruction No. 1, given at the request of plaintiff. We find the rules of law stated in the instruction have the express approval of the Supreme Court in Moore v. Transit Co., 126 Mo. 265 and in Heinzle v. Railway, 182 Mo. 547, and of this court in Moxley v. Railway, 123 Mo. App. 80. And we do not believe it fairly may be said that the instruction enlarged the scope of the pleaded cause of action or submitted questions of law for decision by the jury. The instructions must be read as a whole and thus reading them, we find the issues of fact clearly and accurately defined.

The point made in the briefs of defendant that the verdict was excessive has no merit and will not be discussed. The judgment is affirmed. All concur.

