## OKLAHOMA RY. CO. v. THOMAS.

No. 5759—Opinion Filed Jan. 30, 1917.

Concurring Opinion April 10, 1917.

Rehearing Denied April 10, 1917.

(164 Pac. 120.)

(Syllabus by the Court.)

1. **Street Railroads—Collision Between Car and Fire Apparatus—Contributory Negligence.**

Because of the exceptional circumstances under which firemen respond to an alarm of fire and under which fire apparatus is operated, the ordinary rules which are almost universal in their application regulating the conduct of persons engaged in their private business or pleasure are not controlling in a case where members of a fire department are hurrying to the scene of a fire in answer to a fire alarm.

2. **Same—Observance of Ordinance—Presumption.**

The fire department of Oklahoma City was by ordinance given the right of way in passing to a fire, and defendant street railway company was required by ordinance to stop its street cars in case of fire, 300 feet from the street intersection on which fire apparatus would cross its track. Plaintiff was riding on a truck to a fire, driven by another. Proper warnings were being given of the approach of the truck, and plaintiff and the others riding upon said truck were justified in assuming that defendant's car would be stopped as required by ordinance.

3. **Same — Contributory Negligence — Evidence.**

In an action for damages for injuries to a fireman caused by a collision between a truck upon which he was riding to a fire, and a street car, evidence that plaintiff had previously ridden upon the truck when traveling at a similar rate of speed in going to fires, or that plaintiff knew when he boarded the truck on the night of the accident that same would proceed at any particular rate of speed, was inadmissible to prove contributory negligence upon the part of plaintiff at the time of the accident.

4. **Negligence — Imputed Negligence — Firemen—Driver of Truck.**

Where plaintiff and another were riding upon the rear of a truck which was being driven at a high rate of speed to a fire, and plaintiff had no voice in the selection of the driver, and no control over his actions or the speed of the truck, but was required by his duties to mount thereon and proceed to the scene of the fire upon an alarm being given, and render such assistance as was possible, and while riding thereon a collision occurred between said truck and a street car, resulting in injuries to plaintiff, the negligence, if any, of the driver of said truck cannot be imputed to plaintiff.

5. **Damages—Physical Examination—Power of Court.**

Where plaintiff in an action for damages for personal injuries exhibits a portion of his body to the jury, and physicians called by him testify as to the nature and extent of his injuries, and plaintiff offers to submit to an examination by any physician or board of physicians named by the court other than those in the employ of defendant, who are shown to have been employed by the defendant and who are to receive $25 per day for testifying in the case, it is not error for the court to refuse to require plaintiff to submit to an examination by the physicians employed by defendant.

Thacker, J., dissenting in part.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Suit by Ross Thomas against the Oklahoma Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John W. Shartel and Burke Shartel, for plaintiff in error.

Harris, Nowlin & Singleton and D. K. Pope, for defendant in error.

HARDY, J. Defendant in error brought suit in the district court of Oklahoma county against plaintiff in error for damages for personal injuries alleged to have been sustained in a collision between one of defendant's street cars and a gasoline automobile truck upon which he was riding to a fire in Capitol Hill, one of the suburbs of Oklahoma City, at about 10 o'clock p. m. May 17, 1912. The parties will be designated as they appeared in the trial court.

The collision occurred at the crossing of Robinson and Poplar streets about two blocks south of the steel bridge across the North Canadian river. Robinson street runs north and south, and is the principal street from the business section of Oklahoma City to Capitol Hill, being paved the entire distance, and is the route usually traveled by the fire department when making runs in answer to fire alarms in the south portion of the city. Poplar street runs east and west, and the tracks of the defendant company run along said street at the intersection thereof with Robinson street. The truck upon which plaintiff was riding at the time of the injury was being driven by the captain, the regular driver being off duty that night, and was proceeding south, while the street car was proceeding east. Plaintiff and another fireman were standing on the back part of the truck where a step and railing to hold to was provided. The evidence as to the speed of the truck varies. No question is made by the defendant as to the negligence of the crew in

charge of its street car at the time of the accident, but error is assigned upon the action of the court in excluding from consideration of the jury the alleged negligence of the driver, of said truck, and evidence as to whether the plaintiff had been accustomed to riding upon said truck theretofore at a similar rate of speed, and in the giving of certain instructions and refusing certain requested instructions offered by defendant, and in refusing to require the plaintiff to be stripped before the jury and permit certain physicians selected by defendant to make an inspection of his person and testify in reference thereto.

The first 16 assignments of error are grouped together by counsel and considered as presenting three questions for consideration by this court. First, that notwithstanding the ordinance giving the fire department the right of way its apparatus must be operated with ordinary care and at a rate of speed consistent therewith. Second, that the operation of the auto truck at the rate of speed at which it was going over a crossing with an obstructed view makes a case of contributory negligence, which should have been submitted to the jury, unless the plaintiff was in no way responsible for such negligence. Third, that the madcap pace at which the truck was going was a steady practice participated in by plaintiff for four or five months, whereby he adopted the negligence of the driver and made it his own.

Evidence was admitted without exception that plaintiff had been riding upon this particular truck for several months, and that it had been operated in the same manner and at the same speed. On cross-examination of plaintiff, he was asked whether he had previously ridden upon the truck when going at the same rate of speed; and he was also asked the specific question if he did not know when he got on the machine that evening, it would, in all reasonable probability, be operated at its full capacity. Objection was sustained to these questions and exceptions reserved. In his instruction upon contributory negligence, the court told the jury that in considering the question of contributory negligence, they should consider only plaintiff's conduct in view of all the circumstances in evidence, and that the acts or omissions of the driver of the truck could not be imputed to or considered as the acts of plaintiff; and, further, that the mere fact that a fire truck or fire apparatus was traveling rapidly when en route to a fire was not negligence of itself, and that if they found the defendant was negligent in causing or permitting one of its street cars to collide with the fire truck upon which plaintiff was riding, and that as a

natural and proximate result thereof, considering the speed of the truck and the character of the collision, the fire truck collided with the curbing or with a telephone pole, and the plaintiff was thrown from the truck and injured, and that his injuries were the direct, natural, and proximate result of the negligence of defendant, and that plaintiff was himself free from negligence directly causing or contributing to his injuries, then plaintiff was entitled to recover, regardless of the rate of speed at which such fire truck was being driven at the time of the collision. Exceptions were saved to the giving of these instructions, and defendant presented several requests, which were refused, embodying the proposition that the fire department had no right under the law to run their fire apparatus at a rate of speed or otherwise operate same in a manner which would ordinarily be dangerous to and expose the lives and persons of other people lawfully using the street in the exercise of due and ordinary care to destruction or injury, and that if plaintiff in the performance of his duties as fireman had been in the habit of riding said truck to fires prior to the date of the accident, and the same had been operated on previous occasions at about the same rate of speed at which it was going at the time of the accident, then the plaintiff could not recover.

The ordinary rules which are almost universal in their application regulating the conduct of persons engaged in the pursuit of their own private business or personal pleasure are not controlling in the case of members of a fire department answering an alarm of fire. Michael v. Kansas City Western R. Co., 161 Mo. App. 53, 143 S. W. 67; Kansas City v. McDonald, 60 Kan. 481, 57 Pac. 123, 45 L. R. A. 429; Houston City R. Co. v. Richart (Tex. Civ. App.) 27 S. W. 918: Same v. Reichart, 87 Tex. 539, 29 S. W. 1040. In some states this distinction has the sanction of legislative regulation expressed in the form of a state statute or municipal ordinance, as is the case here. McBride v. Des Moines City R. Co., 134 Iowa, 398, 109 N. W. 618; Geary v. Met. St. R. Co., 84 App. Div. 514, 82 N. Y. Supp. 1016; New York v. Met. St. R. Co., 90 App. Div. 66, 85 N. Y. Supp. 693.

Fire is known to be one of the most useful and beneficial of human agencies, but it is also known to be one of the most destructive, and in case of a fire, unless prompt and heroic measures are resorted to, it frequently gets beyond control; and especially in large cities its toll of property runs into the millions, and the human lives that are sometimes its prey may be counted by the score. Society has recognized the fact that the individual

efforts of the citizens are ineffectual under such circumstances, and has therefore provided trained men and specially equipped apparatus for the public protection, and in the present case to secure the highest efficiency in the operation of the apparatus and the best results in the efforts of the men to preserve life and property, the fire department is given the right of way by ordinance over the streets and alleys of the city, and all other persons are required to yield such right of way so as not to obstruct the rapid passage of men and equipment to the place of danger. In answering calls to a fire the members of the department are sometimes required to take risks which would be negligence upon the part of the person engaged in his private business. It is often their duty to act in the face of considerable danger to themselves, when to hesitate or stop would result in disastrous consequences. Frequently haste and fearless performance of duty will avoid widespread disaster, and result in the saving of both life and property. To give timely warning to all persons of their approach and secure an uninterrupted passage of men and equipment as they rush along the streets to a fire, gongs or other suitable alarms are constantly sounded, and thus ample notice and opportunity is given to all persons to avoid accident and interference. These signals are well known and recognized, and this right has been the outgrowth of necessity for the public good, and the requirement that individuals and vehicles engaged upon less pressing errands shall hold themselves in readiness to yield the right of way to men and equipment, is reasonable and generally recognized. Warren v. Mendenhall, 77 Minn. 145, 79 N. W. 661; Chicago City R. Co. v. McDonough, 221 Ill. 69, 77 N. E. 577; Farley v. Mayor, 152 N. Y. 222, 46 N. E. 506, 57 Am. St. Rep. 511; Hanlon v. Milwaukee Elec. R. & Light Co., 118 Wis. 210, 95 N. W. 100; Michael v. Kansas City Western R. Co., supra; Houston City R. Co. v. Richart (Tex. Civ. App.) 27 S. W. 918; Same v. Reichart, 87 Tex. 539, 29 S. W. 1040; Dole v. New Orleans R. & Light Co., 121 La. 945, 46 South. 929, 19 L. R. A. (N. S.) 623; Kansas City v. McDonald, 60 Kan. 481, 57 Pac. 123, 45 L. R. A. 429.

Plaintiff, with others, riding upon said truck, was proceeding to a fire in the south part of the city, which was believed to be St. Mary's Academy, a large building filled with children in an outlying and thinly settled district of Oklahoma City, and under the ordinance having the right of way, and the proper signals of the approach of said truck having been given, as appears from the evidence, in the absence of knowledge or notice to the contrary, was justified in assuming that defendant's car would be stopped, as required by ordinance, when within 300 feet of the approaching fire truck. McBride v. Des Moines City R. Co., supra; New York v. Met. St. R. Co., supra; Geary v. Met. St. R. Co. supra.

Defendant urges that the court erroneously sustained objections to the questions asked plaintiff on cross-examination as to whether he had previously ridden upon the truck when traveling at a rate of speed similar to that at which it was traveling at the time of the accident. In this there was no error. It was competent to prove prior acts of negligence upon the part of plaintiff in support of the claim that he was negligent on this particular occasion. While there is some conflict in the decisions we think the weight of authority and the better reasoning support the rule that such evidence is not permissible. To admit evidence of prior acts of negligence injects collateral issues into the case which have a tendency to confuse the minds of the jury, and such evidence should therefore be excluded.

In Great Western Coal & Coke Co. v. McMahan, 43 Okla. 429, 143 Pac. 23, which was an action for the death of a mine employe, the court excluded evidence that for a month preceding the explosion, deceased was habitually negligent in remaining in the mine while shots were being fired, and declared the same inadmissible to prove contributory negligence upon the part of the deceased at the time of the accident. This question was again discussed in St. L. & S. F. R. R. Co. v. Hodge, 53 Okla. 427, 157 Pac. 60. In support of the rule above announced, the following authorities from other jurisdictions are cited: Harriman v. Palace Car Co., 85 Fed. 353, 29 C. C. A. 194; L. & N. R. Co. v. McClish, 115 Fed. 268, 53 C. C. A. 60; I. & G. N. R. Co. v. Ives, 31 Tex. Civ. App. 272, 71 S. W. 772; Aiken v. Holyoke St. R. Co., 184 Mass. 269, 68 N. E. 238; Minot, Adm'r, v. Boston & Maine R. R., 72 N. H. 317, 61 Atl. 509; C., B. & Q. R. Co. v. Gunderson, 65 Ill. App. 638; City of Salem v. Webster, 192 Ill. 369, 61 N. E. 323; L. & N. R. Co. v. Berry, 88 Ky. 222, 10 S. W. 472, 21 Am. St. Rep. 329; Dalton v. C., R. I. & P. Co., 114 Iowa, 257, 86 N. W. 272; Kaillen v. N. W. Bedding Co., 46 Minn. 187, 48 N. W. 779; Dunham v. Rackliff, 71 Me. 345. By taking the view that such evidence was proper, the fact that plaintiff had previously ridden upon the truck when operated in the same manner and at the same rate of speed was established by the testimony of other witnesses, and was not denied.

The other question to which objection was sustained was whether plaintiff knew when

he boarded the truck on the night of the injury that same would be operated at its full capacity. Defendant urges that this knowledge upon the part of plaintiff should have been considered by the jury in determining whether the negligent driving of the truck was concurred in and adopted by plaintiff, and that even though the rate of speed at which the truck was operated was not of itself negligence, this fact, together with the knowledge of the plaintiff that it would be operated at a dangerous and reckless rate of speed, was competent to go to the jury upon the question of contributory negligence. No claim is made that plaintiff selected or had any control over the driver, nor that he had any reason to suspect a want of care, skill, or sobriety upon his part other than he knew that the truck would be driven at a high and dangerous rate of speed. The mere fact that the truck was driven at any particular rate of speed was not negligence of itself, and, this being true, even though plaintiff knew that it would proceed at a high rate of speed, this knowledge did not transform an act not negligent upon the part of the driver to contributory negligence upon the part of plaintiff.

It is not contributory negligence per se for a person to engage in an occupation that is inherently dangerous. Men may properly and lawfully do work that is essentially dangerous in its nature, and a person engaged in the performance of such work may know that it is dangerous, and yet not be guilty of contributory negligence in the performance thereof, unless he voluntarily and unnecessarily exposes himself to the danger. Wood, Master and Servant, 763; Beach, Contributory Negligence, sec. 370; 26 Cyc. 1256.

Plaintiff was not riding upon the truck in the prosecution of any common enterprise in which he and the driver had voluntarily engaged, but was riding thereon in pursuance of his individual duty as a member of the fire department and in his capacity as a servant of the city. McBride v. Des Moines City R. Co., 134 Iowa, 398, 109 N. W. 622.

The case of Brommer v. Penn. R. Co., 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, among others, is relied upon as sustaining defendant's contention. Brommer, with three others whom he had invited to ride with him, was driving his automobile over a grade crossing of the railroad in Camden, N. J., when it collided with a train. Mrs. Henderson, one of the occupants, was killed, and the other three injured. The trial court held Brommer guilty of contributory negligence, while Henderson and Mrs. Blackson, the other occupants, recovered a judgment. The

judgment in favor of Henderson was reversed because it appeared that all the occupants of the car were united for a common purpose, and had a common object in view, and because Henderson, who occupied the front seat with Brommer, was not a passenger and Brommer was under no greater duty toward the others than they to him, and it was said to be Henderson's duty to look out for dangers, and to avoid them if practicable by suggestions or protest. The verdict in favor of Mrs. Blackson, who rode in the rear seat of the automobile, was sustained, because it did not appear that she knew of the danger or could have known thereof by the exercise of ordinary care. In its opinion, the court cited and followed the rule announced by the Supreme Court of the United States in Little v. Hackett, 116 U. S. 371, 6 Sup. Ct. 393, 29 L. Ed. 654:

"That one cannot recover damages for an injury to the commission of which he has directly contributed is a rule of established law and a principle of common justice. And it matters not whether that contribution consists in his participation in the direct cause of the injury, or in his omission of duties which, if performed, would have prevented it. If his fault, whether of omission or commission, has been the proximate cause of the injury, he is without remedy against one also in the wrong."

Applying the rule announced in the above quotation, the action of the trial court herein was right. It is not contended that plaintiff drove the car or that he had anything to do with its management, or could have prevented the accident by any means within his power. The truck was about 60 feet long, and the driver was riding upon the front seat, while plaintiff was riding at the rear, his duty simply being to mount to his position and ride to the scene of the fire and render such assistance as was possible. Should he refuse to do so, he would in all likelihood lose his position, and, if not, he ought to lose it, would be derelict in the performance of his duty and be the object of public scorn and contempt.

We cannot see where, under the undisputed evidence, plaintiff was guilty of any positive act of negligence contributing to his injuries, or that he neglected to perform any duty incumbent upon him which could or might have prevented the accident, and his knowledge of the probable speed of the truck did not tend to show contributory negligence upon his part, and the objection was therefore properly sustained. St. L. & S. F. R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336. There was no error in the instructions given nor in refusing to give those requested by defendant. Neither the relation of master and servant

nor principal and agent existed. Nor was there any evidence of a joint enterprise whereby a responsibility existed for each other's acts or a right to direct and govern the driver by the plaintiff.

The authorities in this country are nearly uniform to the effect that where a person is riding in a vehicle over which he has no authority, and where he has no control over the driver, and has no reason to suspect a want of care, skill, or sobriety upon his part, and is injured by the concurring negligence of the driver and some third person or corporation, the negligence of the driver is not imputed to him so as to prevent a recovery for damages from the other tort-feasor. This question was very thoroughly considered by the Supreme Court of Massachusetts in Schultz v. Old Colony St. R., 193 Mass. 309, 79 N. E. 873, 8 L. R. A. (N. S.) 597, 118 Am. St. Rep. 502, 9 Ann. Cas. 402, in which the authorities throughout the country were collected and reviewed. This case is a valuable one in this respect, and deduces the following rules: That where an adult person possessing all his faculties and personally, in the exercise of that degree of care which common prudence requires under all the attending circumstances, is injured through the negligence of some third person, and the concurring negligence of one with whom the plaintiff is riding, as guest or companion, between whom and the plaintiff the relation of master and servant or principal and agent or moral responsibility in the common enterprise does not in fact exist, the plaintiff being at the time not in position to exercise authority or control over the driver, then the negligence of the driver is not imputable to the injured person, but the latter is entitled to recover against the one through whose wrong his injuries were sustained. Disregarding the passenger's own due care, the test whether the negligence of the driver is to be imputed to the one riding depends upon the latter's control or right of control of the actions of the driver so as to constitute in fact the relation of principal and agent or master and servant, or his voluntary unconstrained, noncontractual surrender of all care for himself to the caution of the driver. And this same rule applies in cases where the vehicle in question is an automobile. 2 R. C. L. 1207; The Law Appl. to Motor Vehicles, Babbott, sec. 596, p. 474; Berry's Law of Automobiles, sec. 180; Huddy on Automobiles, sec. 114; Daniel's Law of Motor Vehicles, sec. 230.

In Geary v. Met. St. R. Co, 84 App. Div. 514, 82 N. Y. Supp. 1016, affirmed in 177 N. Y. 535, 69 N. E. 1123, the action was for the death of a fireman who was killed by a collision of a fire truck on which he was riding with the street car of defendant company, and the defense there made was that the negligence of the driver of the fire truck should be imputed to the deceased and bar a recovery by plaintiff. In the opinion the court says:

"The question presented by the exception, therefore, is whether contributory negligence on the part of the driver would defeat a recovery. The deceased had no control over the driver, and the driver had no control over the decedent. They were both in a common employment in a sense, it is true, in that they were members of the fire department of the city of New York. The decedent, however, was employed, and it was his duty, to perform services strictly as a fireman, while the driver was employed and it was his primary, if not his exclusive, duty to drive, manage, and look after the team. The case is not distinguishable on principle from Bailey v. Jourdan [18 App. Div. 387], 46 N. Y. Supp. 399, where it was held that the negligence of a driver of a patrol wagon was not imputable to a patrolman riding in the wagon, where the patrol wagon, with the driver and patrolman, was sent out by the sergeant to bring in a prisoner."

The case of Birmingham R. & Elec. Co. v. Baker, 132 Ala. 507, 31 South. 618, involved a like question, and the third paragraph of the syllabus is as follows:

"Where the concurring negligence of the driver of a hose cart and employes in charge of a street car results in a collision, the negligence of the driver cannot be imputed to a fireman riding on the truck, but having nothing to do with the driving, who is injured in the collision, and it will not preclude him from recovery from the street car company."

The Supreme Court of Iowa announced the same rule in McBride v. Des Moines City R. Co., 134 Iowa, 398, 109 N. W. 618, in the following language:

"We are satisfied, however, that the facts do not afford the slightest occasion for applying or even discussing the common enterprise rule. The deceased was not riding on the hose wagon in the prosecution of any common enterprise in which he and the other members of the fire department had voluntarily engaged, but in the pursuance of his individual duty as a member of the fire department, and in that capacity a servant of the city. He had nothing to do with the selection of the driver, and he had no control over his acts. Under such circumstances it has been frequently held by other courts that there is no relation of common enterprise which would justify the imputation to the deceased of any negligence on the part of the driver of the hose wagon."

And the St. Louis Court of Appeals in Burleigh v. St. Louis Transit Co., 124 Mo. App.

724, 102 S. W. 621, held to the same doctrine in the following language:

"Where plaintiff, a fireman, was riding as a passenger on a fire truck which was being driven home from a fire, and plaintiff had no control over the driver of the truck, the latter's negligence was not imputable to him."

The Supreme Court of Michigan, being one of the states which recognize the doctrine of imputed negligence, upon a similar state of facts, held that the negligence of the driver of a fire engine cannot be imputed to a fireman engaged in his duties upon the engine so as to defeat recovery by him. In determining this question the court said:

"Whatever may be the rule as to joint undertakers, where one may be said to be the agent of the other, * * * or between a driver and a mere volunteer, in which case, perhaps, an implied agency may be said to exist, we are unable to see why, in a case like the present, where two fellow servants having duties to perform, the one wholly distinct from the other, are severally engaged in the performance of such duties, the negligence of the one should be imputed to the other. The cases are numerous in which the courts have refused to apply the doctrine of imputed negligence in such cases." McKernan v. Detroit Citizens' St. R. Co., 138 Mich. 519, 101 N. W. 812, 69 L. R. A. 347.

In the case of St. L. & S. F. R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336, Powell had planned an automobile trip to the country with his wife and two lady visitors, but, finding it impossible to go, arranged with one Dubose to drive his car. At the suggestion of Dubose, the deceased was invited to accompany the party. On their return to the city, the automobile in which they were riding, while being driven along the highway, ran upon the brink of a hole therein, negligently left open by the defendant, into which it fell, and in falling overturned, killing deceased, and it was held that the contributory negligence of the chauffeur could not be imputed to one traveling in a vehicle by invitation of the owner; that in order to render one liable for the negligence of the chauffeur the relation of master and servant or principal and agent must exist, or the parties must be engaged in a joint enterprise whereby a responsibility for each other's acts exists, and that parties cannot be said to be engaged in a joint enterprise unless there be a community of interest in the object or purpose of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto, and that before the negligence of the chauffeur could be imputed to the passenger, each must have some voice and right to be heard in its control or

management; and it was held that the court did not err in refusing to submit to the jury the question of whether the deceased at the time he was killed was engaged in a joint or common enterprise for the reason that there was no evidence from which a joint enterprise might have been reasonably inferred. It was contended that the negligence of the chauffeur was properly attributable to the deceased, and should have been submitted to the jury in support of the defense of contributory negligence to be determined by the jury as a question of fact under the Constitution (article 23, sec. 6), but this court held it was the duty of the trial court to decide as a matter of law upon the undisputed facts that the acts of the chauffeur could not be imputed to deceased, and therefore were not contributory negligence upon his part.

At a former trial of the case at the request of the defendant and with the consent of the plaintiff, the court appointed a board of physicians composed of Drs. McNair, Moorman, and Ferguson, who, after making an examination of plaintiff's injuries, returned into court and testified in the case. Upon the present trial Dr. McNair testified in plaintiff's behalf indicating on plaintiff's person the particular condition to which he testified. Plaintiff also called other physicians, but they were not called upon to explain their testimony by indicating on plaintiff's body the injuries about which they testified. Defendant called Dr. Moorman, also a member of the board appointed by the court, during whose examination plaintiff, without objection, stripped his body and permitted said witness to explain his testimony by pointing out the particular injuries concerning which he testified as had been done by Dr. McNair. In addition to Dr. Moorman, defendant called Drs. Cunningham and Reed, and requested that plaintiff submit to an examination by them in the presence of the jury for the purpose of testifying on behalf of defendant. Plaintiff objected to an examination by physicians named, for the reason they were in the employment of defendant, but offered to submit to an examination by two or more disinterested physicians, to be selected by the court, which proposition defendant declined to accept. Thereupon the court refused to require plaintiff to submit to an examination by said physicians, and error is assigned upon this ruling.

It has been held that the courts of this state, in the absence of a constitutional or statutory provision authorizing them to do so, have no authority in an action for damages to order a plaintiff to submit in advance of or during the trial of a case to a physical examination by a physician to be appointed

by the court. City of Kingfisher v. Altizer, 13 Okla. 121, 74 Pac. 107; A., T. & S. F. R. Co. v. Melson, 40 Okla. 1, 134 Pac. 388, Ann. Cas. 1915D, 760.

Defendant contends that because plaintiff called Dr. McNair as a witness and exhibited his body to the jury, he thereby waived his exemption, and conferred upon the court power to compel him to submit to an examination by any physician or physicians to be selected by defendant, and that the court erred in not requiring plaintiff to submit to an examination by the two physicians offered by it, and in support of this contention cites a number of decisions declaring the rule that where a plaintiff submits his body to the jury, and permits physicians in his behalf to testify with reference to his alleged injuries, the court thereby is authorized to compel him to submit to an examination by physicians for the purpose of permitting them to testify on behalf of defendant. None of the decisions cited appear to be based upon a state of facts similar to those here involved. Upon the former trial, plaintiff waived his exemption upon the condition that the examination should be made by a board of three physicians to be selected by the court, and defendant, in order to obtain the privilege of such an examination and the testimony of the physicians making same, agreed to these conditions. Had plaintiff not made this agreement, an examination could not have been had nor testimony based thereon procured by defendant in the absence of a waiver of his exemption by plaintiff. Does the fact that a new trial was granted relieve the parties from the agreement entered into, and authorize the court to compel the plaintiff to submit to an examination? We think not, in the absence of additional waiver upon the part of plaintiff. While calling other physicians, plaintiff only exposed his person to the jury in connection with the testimony of Dr. McNair, and without objection permitted Dr. Moorman to examine his body and testify in connection with such examination. Not having permitted any physician other than the one appointed by the court to make an examination, to call another member of the board, with reference thereto, plaintiff cannot be said to have waived his exemption further than he had done upon the former trial; and having permitted defendant, without objection, to call another member of the board he has submitted to all of the conditions upon which the exemption was originally waived. For another reason there was no error in the ruling of the court. If it be said that calling Dr. McNair was a waiver of his exemption, independent of the agreement en-

tered into at the first trial, the court was authorized to impose such reasonable restrictions as it might deem best upon the right of the defendant to such an examination. In Pronskevitch v. Chicago & Alton R. Co., 232 Ill. 136, 83 N. E. 546, plaintiff removed his clothes from the upper part of his body and exhibited his injuries to the jury. The defendant requested the court to require him to submit to an examination by its physicians in the presence of such witnesses as he might desire in a private room or place convenient to the courtroom. Plaintiff expressed a willingness to be examined in the presence of the jury, but not out of their presence, and the court refused to compel an examination as requested by defendant, and it was held that plaintiff, having offered his body voluntarily to the inspection of the jury, it became a subject of examination under such reasonable restrictions as the court might see fit to require, and inasmuch as he had offered to submit to an examination in the presence of the jury, there was no just cause for complaint.

In Wheeler v. Chicago & W. I. R. R. Co., 267 Ill. 306, 109 N. E. 330, defendant requested the right to have plaintiff examined by their experts, whereupon plaintiff offered to submit to an examination by the physician of defendant who had previously examined and treated him for the injury. The court said that the offer was fair, and that there was no error in refusing to require plaintiff to submit to a further examination by other physicians to be selected by defendant.

In the present case we think the offer of plaintiff was fair under the circumstances, and there was no error in refusing defendant's request. There is no assignment in the petition in error nor in the briefs of counsel, nor any claim made that the damages awarded plaintiff were excessive. The negligence of defendant is admitted; as to the accident there is no controversy; nor is there any contention that plaintiff was not injured; the defendant's chief reliance being the defense of contributory negligence.

The judgment is therefore affirmed.

All the Justices concur.

---

THACKER, J. (concurring). This case in respect to the defense of contributory negligence is similar to and follows the case of St. L. & S. F. R. Co. v. Bell, 58 Okla. 84, 159 Pac. 336, in which I concurred in the conclusion reached, but dissented from the reasons given for the same.

In the instant case the defendant asked the trial judge to give the jury several instructions in its own favor as to this species of contributory negligence as a defense, all of which went beyond a mere definition of the defense and some of which in effect closely approached a direction to the jury to find that the evidence in the case established this defense, thus invading the province of the jury under section 6, art. 23 (Williams', sec. 355), of our Constitution; but, instead of invading what I regard as the province of the jury to instruct them for the defendant on this defense, the trial judge invaded their province and instructed them for the plaintiff to the effect that the evidence was not sufficient to establish this species of contributory negligence, which, although he may have been justified in thinking, he had no right to instruct because of this section of the Constitution.

As I understand the opinion of the court in these cases, they hold that there is no evidence of imputed negligence, and thus, in effect, that the question of the existence of a question of fact to be left to the jury under the evidence, which holding necessarily involves a denial of the converse of the statement in St. Louis & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436, that:

"In no event is the court authorized to direct a verdict or sustain a demurrer to the evidence upon the ground that it conclusively appears that the plaintiff is guilty of contributory negligence as a matter of law."

This statement in the Hart Case seems to be in perfect accord with the provision of section 6, art. 23 (Williams', sec. 355), of our Constitution that:

"The defense of contributory negligence * * * shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury."

And this right seems to forbid the trial court to instruct the jury as it did in effect in this case that the negligence of the driver of the motor truck upon which the plaintiff was riding could not be imputed to the plaintiff as the contributory negligence of the latter.

I cannot say what these cases presage as to other phases of the question of imputed contributory negligence not involved in them, nor what, if any, grounds are thought to exist for differentiating them from cases in which the rule just quoted from the Hart Case seems applicable, although I see nothing different in the facts of either of these cases, except that this species of contributory negligence was not under consideration in the Hart Case, and here the defendant instead of the plaintiff invokes the above-quoted constitutional right; but, be this as it may, I am wholly unable to understand why, as I think is certain, this plain and simple provision of our Constitution is not allowed in these cases and effect demanded by its language, which is broad enough to include every species of contributory negligence and every question as to whether it exists, and to be equally as available to the defendant as to the plaintiff. It is certain that no practical or theoretical difficulty would be encountered in allowing this provision of the Constitution equal effect as to every species of this defense and as a right of each party.

Imputed negligence is unquestionably a species of contributory negligence, as I undertook to show by both reason and indubitable authority in the case of St. L. & S. F. R. Co. v. Bell, supra; and, if this was not so, it could be allowed no effect whatever as an affirmative defense. The effect of the negligence of a third party as an affirmative defense against a plaintiff is the result of imputing it to the plaintiff as his own contributory negligence; and this species of contributory negligence is as clearly within the provisions of the Constitution above quoted as any other species can possibly be.

If, as seems to be well settled (St. L. & S. F. R. Co. v. Hart, 45 Okla. 659, 146 Pac. 436), under this provision the court can in no case say, as a matter of law, that the evidence establishes the defense of contributory negligence, it must follow as a necessary corollary that the court can in no case say, as a matter of law, that the evidence does not establish this defense; and the trial court should do no more, when this defense is pleaded and insisted upon, than define it and advise the jury of its legal effect in leaving it to them. If any reason for a different view has ever been conceived, it has found no expression in any opinion by this court; but, as inexplicable as it seems to me, it has been repeatedly assumed, as in the instant case, that this provision of the Constitution does not apply to this species of contributory negligence or at least, does not apply as a right of a defendant. Such a discrimination against this species or between the parties as to their rights under this provision seems unreasonable and unthinkable to me.

It does not follow from allowing the parties an equal right to the benefit of this provision of the Constitution that the trial court could not exclude evidence clearly irrelevant and immaterial to such a defense, and thus fully protect itself from bad faith or any character of intolerable wrong in ad-

ducing evidence; but the parties are certainly entitled to the greatest reasonable latitude in introducing evidence they deem relevant and material to the issue made by this defense; and, although the trial judge may protect himself, the jury, and the adverse party from mere trespasses upon their time and attention, he, in respect to the evidence before the jury, has no more right to instruct them that it is insufficient to establish the same than he would have to instruct the jury that evidence clearly showing such defense was sufficient to establish the same.

If a defendant, without reason, should urge upon a jury that the evidence before it showed contributory negligence on the part of the plaintiff, it may be safely assumed that the fruits of his folly would prevent its repetition in subsequent trials; but, as stated in my concurring opinion in St. L. & S. F. R. Co. v. Bell, supra, this provision of the Constitution would not prevent a new trial where it was clear that the finding of the jury as to the existence or nonexistence of contributory negligence was not fairly reached; and, where it is absolutely clear that there is no room for difference of opinion as to the existence or nonexistence of this defense, except upon the theory of mistake (other than an error of judgment), prejudice, or corruption, I have no doubt that the trial judge will usually find that he is able to set aside a wrong verdict upon some statutory ground, as I stated in St. L. & S. F. R. Co. v. Bell, supra.

The provision of the Constitution under consideration, if allowed the effect required by its language, would greatly simplify the duties of the trial judge and of this court in respect to this defense; and, so far as I know, no one has so far suggested any substantial reason for not allowing it that effect; but, without explanation, it is simply denied such effect.

Although other and especially unrelated rights are not destroyed or impaired by this defense, and the latter may at least be incidentally affected and limited during the trial by the action of the trial judge in performing his duties in respect to such other rights, as, for instance, in the prevention of mere trespasses upon the time and attention of the adverse party, the jury, and himself, and in the correction of any error either in the express or implied disclosure of his own opinion as to the relevancy or materiality of evidence admitted upon this defense, the question of the actual or absolute existence of this defense. including the question as to whether any or all of the evidence that has been properly admitted is sufficient to prove

the same, however far short of such proof, or however conclusive, the judge may think such evidence, is clearly for the jury under said section 6, art. 23 (Williams', sec. 355), of our Constitution; and, since this section of our Constitution relates primarily to the state of the evidence when both parties have closed, and to the instructions of the court to the jury, whenever the trial judge does more than define this defense in his instructions, and tells the jury what its effect is upon the plaintiff's right to recover, if found to exist, which seems to be but an act of leaving it to them, especially if he does more than this for the purpose of affecting the result of the issue upon this defense, he invades their exclusive province, and violates a constitutional right of a party to the action.

It seems clear to me that this section of our Constitution should, and in most respects must of necessity, be construed as if the following parenthetical interpolations were a part of the same, that is, as now follows:

"The defense of contributory negligence or of assumption of risk shall (when pleaded and insisted upon), in all cases whatsoever (where under the law the proof of the same would defeat the plaintiff's right to recover), be a question of fact, and (the question as to whether this defense in fact exists) shall, at all times, be left to the jury (so that, although the trial judge may define this defense in order that the jury may know what he is leaving to them and may instruct them that its proof defeats recovery, he shall never instruct the jury that this defense or any element of the same has or has not been proven, whatever may be the state of the evidence in respect to the same)."

I think the opinion of the court clearly wrong in this respect. However, since the defendant invited the trial judge to invade the province of the jury upon the question of imputed negligence to instruct in its own favor, contrary to what it appears the jury probably should and would have found as to this defense, the defendant is not in a good position to ask a reversal because the judge did invade the province of the jury upon this question, and instruct in favor of its adversary what the jury probably should and would have found.

Although I dissent from the views of this court in respect to the defense of contributory negligence and in respect to the instructions of the trial judge thereon for the same reasons and to the same extent that I dissented from views to the same effect expressed in the opinion of this court in the case of St. L. & S. F. R. Co. v. Bell, supra, and, although I have the same slight doubt that I there expressed as to whether I should concur in the conclusion reached, I here, as

there, resolve the doubt in favor of the verdict and judgment of the trial court for the reasons here stated and more fully set forth in my concurring opinion in that case.